**John RICHARDSON, Appellant,**

v.

**MISSOURI STATE TREASURER, Custodian of the Second Injury Fund, Respondent.**

**No. ED 90619.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 27, 2008.

Cynthia M. Hennessey, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara L. Toepke, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

John Richardson ("Richardson") appeals the award of the Labor and Industrial Relations Commission ("the commission") affirming the finding of the administrative law judge ("ALJ") in favor of the Missouri State Treasurer, as custodian of the Second Injury Fund ("Second Injury Fund"). Richardson claims the commission erred in affirming the ALJ's award because there was insufficient evidence to support it. Finding no error, we affirm.

Richardson filed a claim for compensation with the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation against his employer, General Motors ("GM") and the Second Injury Fund alleging injuries to his neck, cervical spine, shoulders, thoracic spine, arms, hands, low back, knees and feet. Richardson entered into a stipulation for compromise settlement with GM. He received a lump sum payment of $11,463.82 based upon an approximate disability of seven and a half percent of each shoulder. A hearing was subsequently held on Richardson's claim against the Second Injury Fund before an ALJ. The ALJ entered findings of fact and rulings of law, finding that Richardson failed to "persuade" that the combination of his pre-existing disabilities with the disability from his last injury rendered him unemployable on the open labor market. Therefore, the ALJ found in favor of the Second Injury Fund and denied Richardson's claim. Richardson filed an application for review with the commission. The commission af-

firmed the ALJ's award, finding it was supported by competent and substantial evidence. Richardson now appeals.

Section 287.495.1 RSMo (2000)[1] provides that on appeal we may modify, reverse or remand the award of the commission only if we find:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

■ We no longer review the evidence in the light most favorable to the commission's award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). Instead, we review the record in its entirety and determine whether there is "sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Id.* at 222–23. This determination is made after considering the evidence in the context of the record as a whole. Id.

■ In his sole point on appeal, Richardson claims the commission erred in affirming the ALJ's decision because it was not supported by sufficient competent and substantial evidence in the record. Specifically, Richardson argues the ALJ's conclusion that the opinion of James England, Jr., a rehabilitation counselor, was "flawed" because he failed to take into account all the expert medical opinions was not supported by sufficient evidence.

1. All further statutory references are to RSMo (2000)

■ Pursuant to section 287.220, the Second Injury Fund is liable in certain cases of permanent disability where there is a preexisting disability. The Second Injury Fund is responsible for that portion of disability attributable to the preexisting condition. *Gassen v. Lienbengood,* 134 S.W.3d 75, 79 (Mo.App.2004). If a claimant establishes either that the preexisting partial disability combined with a disability from a subsequent injury to create a permanent and total disability or that the two disabilities combined result in a greater disability than that which would have occurred from the last injury alone, the Second Injury Fund is liable. *Id.* The worker's ability to compete in the open labor market is the determining factor as to whether the combination of injuries resulted in permanent and total disability. *Knisley v. Charleswood Corp.,* 211 S.W.3d 629, 635 (Mo.App.2007).

Richardson argues this case is "nearly" identical to *Highley v. Von Weise Gear,* 247 S.W.3d 52 (Mo.App.2008). In *Highley,* this court considered a similar argument concerning the commission's finding of no permanent and total disability based upon the uncontradicted testimony of James England, Jr. The court discussed the separate standards regarding credibility determinations made by the commission and our court's deference to such findings. *Id.* at 56–57. These standards were discussed in *Copeland v. Thurman Stout, Inc.,* 204 S.W.3d 737, 743 (Mo.App.2006). First, the *Copeland* court noted the general rule that the acceptance or rejection of medical evidence is for the commission. *Id.* (citing *Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 527 (Mo. banc 1993)). The commission may disbelieve uncontradicted or unimpeached testimony. *Id.* However, in *Corp v. Joplin Cement Co.,* 337 S.W.2d 252, 258 (Mo. banc 1960), the Supreme Court stated that where evidence is uncontradicted or unimpeached, "the reviewing court may find the award was not based upon disbelief of the testimony of the witnesses." The *Copeland* court found these two standards to be compatible. 204 S.W.3d at 743. If the commission expressly declares it disbelieved uncontradicted or unimpeached testimony, the *Alexander* rule applies. *Highley,* 247 S.W.3d at 57 (citing *Copeland,* 204 S.W.3d at 743). However, if the record is silent regarding credibility, the *Corp* rule applies. *Id.*

In *Highley,* the commission found the opinions of two expert witnesses testifying on behalf of the claimant to be "flawed" because they did not take into account the claimant's full work history. 247 S.W.3d at 57. Based upon this finding, this court concluded the commission did not make a credibility determination regarding the expert testimony. *Id.* at 58. This court stated, "[t]he commission did not conclude it disbelieved England's testimony.... Rather, the commission concluded England simply did not take [certain] testimony into consideration in determining Highley was permanently and totally disabled." *Id.* at 57. Thus, the court concluded the *Corp* rule applied and it could find the award was not based upon disbelief of the testimony of the witnesses. *Id.;* (citing *Copeland,* 204 S.W.3d at 743). As such, the commission could not arbitrarily ignore or disregard competent, substantial, and undisputed evidence of unimpeached witnesses. *Id.* Additionally, the commission could not base its findings upon conjecture or opinion not supported by sufficient evidence. *Id.* The *Highley* court concluded that the commission's finding regarding England's testimony was not supported by substantial and competent evidence, and the commission's determination that Highley was not permanently and totally disabled was not supported by substantial and competent evidence in the record. *Id.* at 58. The court reversed the award and

remanded with directions to enter an award finding Highley permanently and totally disabled. *Id.* at 59.

In this case, the commission noted that the opinions of James England, Jr., the vocational rehabilitation counselor and Dr. Raymond F. Cohen, a neurologist, conflicted with that of Dr. Bernard C. Randolph, Jr. regarding whether Richardson was capable of employment. England and Dr. Cohen opined that Richardson was unemployable on the open labor market. Dr. Randolph; however, concluded Richardson was capable of employment with restrictions. The commission concluded that, "[a]t issue, then, is whether the vocational opinion of Mr. England or the medical opinion of Dr. Randolph is the most persuasive on the issue of the ability of Mr. Richardson to be employable on the open labor market." The commission ultimately found England's opinion "flawed to the extent if fails to take into consideration all of the expert medical opinions in the matter relating to work restrictions." Specifically, the commission determined England failed to consider the restrictions suggested by Dr. Randolph as well as recent medical evaluations by Dr. Susan MacKinnon and Dr. K. Daniel Riew in which the doctors concluded no work restrictions were needed. The commission's conclusions in this case are distinguishable from those in *Highley*.

In *Highley*, England's opinion concerning claimant's permanent and total disability was uncontradicted. 247 S.W.3d at 58. Here, there was contradictory evidence presented concerning Richardson's permanent and total disability through the deposition of Dr. Randolph. England testified he did not believe Richardson could sustain even sedentary work, and therefore, he believed Richardson was permanently and totally disabled. However, Dr. Randolph testified that in his opinion Richard-

son would be able to work with certain restrictions. Although Dr. Randolph stated he would defer to the opinion of a vocational expert with respect to what positions may or may not be available as well as an overall opinion as to employability, he ultimately concluded Richardson was able to work with physical restrictions. The commission placed significant weight upon this testimony. While we have some concern with respect to the commission's use of the term "flawed" when making its conclusions regarding England's opinion instead of specifically commenting upon the credibility of England's testimony, we do not believe in this case the commission was silent regarding the credibility of the expert testimony. Instead, the commission appears to have concluded Dr. Randolph's testimony was more credible or "persuasive." Unlike the court in *Highley*, we are faced with contradictory testimony and a determination that one expert opinion is more "persuasive" than the other based upon the evidence in the record as a whole. Therefore, we must follow the rule set forth in *Alexander*, and leave the acceptance or rejection of medical evidence for the commission. 851 S.W.2d at 527. The commission rejected England's opinion and accepted the opinion of Dr. Randolph and the conclusions from the additional treating physicians that Richardson could work with some restrictions. This conclusion is supported by competent and substantial evidence in the record before us, and therefore, the commission did not err in finding in favor of the Second Injury Fund. Point denied.

The decision of the commission is affirmed.

ROY L. RICHTER, P.J., and GLENN A. NORTON, J., concur.