Charles Michael ANGUS, Appellant,

v.

SECOND INJURY FUND, Respondent.

No. WD 72141.

Missouri Court of Appeals, Western District.

Oct. 12, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 2010.

Application for Transfer Denied Jan. 25, 2011.

2. The record shows that Claimant married Kee in 2008.

Donald T. Taylor and Joseph A. Dewoskin, Kansas City, MO, for appellant.

Richard C. Wiles, Kansas City, MO, for respondent.

Before Division Three: VICTOR C. HOWARD, Presiding Judge, THOMAS H. NEWTON, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Appellant Charles Michael Angus appeals the Final Award Denying Compensation issued by the Labor and Industrial Relations Commission (Commission). The Commission's Final Award upheld a decision of an Administrative Law Judge (ALJ) in the Division of Workers' Compensation (Division), which denied Angus's claim for workers' compensation benefits. For the reasons stated below, we reverse and remand this matter to the Commission.

**Factual Background**

Angus (born 10/19/1954) worked for ATK Alliant Techsystems ("Employer") from 1981 to 1996, when he was discharged as the result of a work-force reduction. Employer re-hired Angus in 2001 as a bullet inspector at an ammunition plant in Independence, Missouri. In August 2002, Angus first complained of severe joint pain.

Angus's duties as a bullet inspector included inspecting bullets as they came down the assembly line, and placing them in bins depending on whether they were good or defective. These bins were then placed into buggies, which would eventually weigh anywhere from 500 to 1,000 pounds depending on the load. Angus was required to push the buggies from each machine to other locations for storage. Overall, Angus's job was physically demanding in that, in addition to pushing the buggies as described above, it required bending, squatting, stooping, and lifting items that would weigh up to fifty pounds.

Because of a litany of joint issues, Angus began seeking medical treatment in 2002, which led his doctors to recommend that his work be restricted. On September 30, 2003, Angus filed a formal injury report, and he continued to work for Employer on a restricted basis. Doing these work assignments caused Angus agonizing pain, particularly in his knees, because he had a hard time bending and straightening both knees.

Further details regarding Angus's medical conditions will be outlined as relevant in the analysis section herein, but it is worth noting that on appeal no party disputes that because of his arthritis Angus is permanently and totally disabled.

In January of 2004, Employer discharged Angus from employment because he could not complete the required work tasks in light of his arthritis, and Angus has not worked since.

On January 18, 2005, Angus filed his claim with the Division. In his claim, Angus alleged permanent total disability.

On December 18, 2008, Angus settled his workers' compensation claim as it pertained to Employer. Specifically, the Stipulation for Compromise Settlement provided that Employer would pay Angus $24,987.60 "based upon approximate disability of 18% of body as a whole."

On August 31, 2009, the ALJ held a hearing on Angus's claim as it pertained to the Second Injury Relief Fund (Fund), which was represented by the Attorney General's office. At the hearing, the ALJ heard evidence from the opposing parties to support their respective theories of the case.

On September 4, 2009, the ALJ issued an Award containing Findings of Fact and Conclusions of Law. In his Award, the ALJ concluded that Angus should receive no workers' compensation benefits from the Fund because he did not sustain a compensable injury, accident, or occupational disease arising out of and in the course of his employment.

Thereafter, the Commission issued its Final Award on January 22, 2010. The Final Award denied compensation to Angus, adopting the findings of the ALJ and finding "that the award of the administrative law judge is supported by competent and substantial evidence and was made in accordance with the Missouri Workers' Compensation Law."

Angus now appeals.

**Standard of Review**

Our standard of review is governed by Section 287.495.1, which provides:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

 "A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e. whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* at 223. In employing this analysis, we are not required "to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Id.*[1]

 The Commission affirmed the decision of the ALJ that awarded no compensation to Angus, and, in doing so, adopted the ALJ's findings and conclusions. "When the Commission affirms and adopts the ALJ's award, we review the ALJ's findings as adopted by the Commission." *ABB Power T & D Co. v. Kempker,* 236 S.W.3d 43, 48 (Mo.App. W.D.2007).

 "This Court's interpretation of the workers' compensation act is informed by the purpose of the act, which is to place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment." *Schoemehl v. Treasurer of State,* 217 S.W.3d 900, 901 (Mo. banc 2007). "Accordingly, the law 'shall be liberally construed with a view to the public welfare.'" *Id.* (quoting Section 287.800).[2] "Any doubt

---

1. In clarifying the proper standard of review, *Hampton* overruled a large number of prior appellate decisions on this discrete point of law. 121 S.W.3d at 223, 224–32. We cite and rely on several such cases in this opinion for legal propositions unrelated to the standard of review, without further notation.

2. Section 287.800 RSMo was amended in 2005 to require strict construction of the Workers' Compensation Act. Neither party disputes that this case should be governed by the prior version of the statute since his injury preceded the amendments. *See also Lawson v. Ford Motor Co.,* 217 S.W.3d 345, 349 (Mo. App. E.D.2007) (concluding that 2005 amendments do not apply retroactively to injury predating their enactment).

as to the right of an employee to compensation should be resolved in favor of the injured employee." *Id.*

## Analysis

In Point One, Angus argues that the Commission erred in adopting the ALJ's opinion and awarding no compensation against the Fund because the Award is not supported by substantial, competent evidence and is contrary to the overwhelming weight of the evidence in that the Commission found appellant to be credible and that his testimony was uncontroverted and was supported by medical evidence.

On appeal, it is undisputed that Angus is permanently and totally disabled, thus presumably precluding him from ever participating in the workplace again. In rejecting Angus's claim, the Commission expressly found "that Mr. Angus's rheumatoid arthritis and the profound affect it has had upon him alone renders him permanently and totally disabled," yet found that his disability was non-compensable because "Mr. Angus' work had nothing to do with the development and progression of his rheumatoid arthritis."

"[T]he issues of 'accident,' 'injury,' and 'causation' are intertwined under the law and the facts of this case," and therefore we must pause to outline the meaning of these terms pursuant to Missouri law. *Van Winkle v. Lewellens Prof'l Cleaning, Inc.*, 258 S.W.3d 889, 894 (Mo.App. W.D. 2008).

At the time of the relevant incident, Section 287.020.3, provided:[3]

(1) In this chapter the term "injury" is hereby defined to be an injury which

has arisen out of and in the course of employment. The injury must be incidental to and not independent of the relation of employer and employee. Ordinarily, gradual deterioration or progressive degeneration of the body caused by aging shall not be compensable, except where the deterioration or degeneration follows as an incident of employment.

(2) An injury shall be deemed to arise out of and in the course of employment only if:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the employment is a substantial factor in causing injury; and

(b) It can be seen to have followed as a natural incident of the work; and

(c) It can be fairly traced to the employment as a proximate cause; and

(d) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life[.]

Moreover, Section 287.020.2 further provided:

The word "accident" as used in the chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen identifiable event or series of events happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. An injury is compensable if it is clearly work related. An

---

3. It should be noted that the legislature substantially revised the text of § 287.020 in 2005. "In addition to amending the statute's text, the 2005 amendments expressly abrogated various judicial decisions interpreting § 287.020." *Van Winkle*, 258 S.W.3d at 894

(citing Section 287.020.10). As was previously noted, the Fund does not dispute Angus's assertion that this case should be decided under the law as it existed prior to the 2005 amendments since his injury preceded the amendments.

injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability. An injury is not compensable merely because work was a triggering or precipitating factor.

■ "The claimant in a workers' compensation case has the burden to prove all essential elements of her claim, including a causal connection between the injury and the job." *Royal v. Advantica Rest. Grp., Inc.*, 194 S.W.3d 371, 376 (Mo.App. W.D. 2006) (citations and quotations omitted). " 'Determinations with regard to causation and work relatedness are questions of fact to be ruled upon by the Commission.' " *Id.* (quoting *Bloss v. Plastic Enters.*, 32 S.W.3d 666, 671 (Mo.App. W.D.2000)). Pursuant to the statute, "[a]n injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability." Section 287.020.2. Nonetheless, "[a]n injury is not compensable merely because work was a triggering or precipitating factor." *Id.* " 'Awards for injuries "triggered" or "precipitated" by work are nonetheless proper *if* the employee shows the work is a "substantial factor" in the cause of the injury.' " *Van Winkle*, 258 S.W.3d at 897 (quoting *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852, 853 (Mo. banc 1999)). " 'Thus, in determining whether a given injury is compensable, a "work related accident can be both a triggering event and a substantial factor." ' " *Id.* (quoting *Royal*, 194 S.W.3d at 376).

## A. Whether Angus Proved That His Injury Was Work Related

■ Here, it was not disputed below that Angus's injury to his knees was caused by arthritis and that this resulted in his total permanent disability. Rather, the sole issue in dispute was whether his arthritis was "work related" and thus a compensable injury.

At the hearing, it was established that Angus suffered from two types of arthritis, (1) rheumatoid arthritis and (2) osteoarthritis, and it was not disputed that the types of arthritis from which he suffered were determinative as to whether Angus's injury was a compensable work related injury. This is because the only medical testimony before the Commission established that rheumatoid arthritis is "a disease where it's basically an autoimmune type of thing, where the person's reacting to their own tissues" in a fashion that was unrelated to Angus's work. On the other hand, the parties did not dispute at the hearing that if Angus's injury was a result of degenerative osteoarthritis, then this would be a compensable injury because this type of arthritis "has a causal relationship to the biomechanical stressing from his work with progression based on the exposure at work." [4]

In rejecting Angus's workers' compensation claim, the Commission found that Angus's *"rheumatoid* arthritis and the profound affect it has had upon him *alone* renders him permanently and totally disabled." (Emphasis added.) The Commission's conclusion in this regard is striking because it expressly disregards the *sole expert's medical testimony* that "that Mr. Angus's total disability results from the combined effect of rheumatoid arthritis and osteoarthritis." While the Commis-

---

**4.** The Fund takes no issue with the general proposition that "repetitive trauma" can result in an "accident" pursuant to Missouri law. *Kelley v. Banta & Stude Constr. Co.*, 1 S.W.3d 43, 49 (Mo.App. E.D.1999). Nor does the Fund take issue with the proposition that

osteoarthritis can be caused by repetitive trauma and that, therefore, in theory, osteoarthritis is the type of injury which would constitute a compensable injury if proven to have been caused by one's employment.

sion found that this medical testimony "lacks credibility," there is no expert medical testimony whatsoever to support the Commission's specific conclusion as it pertains to medical causation.

"[W]e defer to the Commission on issues involving the credibility of witnesses and the weight to be given testimony, and we acknowledge that the Commission may decide a case 'upon its disbelief of uncontradicted and unimpeached testimony.'" *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525, 527 (Mo. banc 1993) (quoting *Ricks v. H.K. Porter, Inc.*, 439 S.W.2d 164, 167 (Mo.1969)). However, "[t]he commission may not substitute an administrative law judge's personal opinion on the question of medical causation of [an injury] for the uncontradicted testimony of a qualified medical expert." *Wright v. Sports Associated, Inc.*, 887 S.W.2d 596, 600 (Mo. banc 1994). "[T]he question of causation is one for medical testimony, without which a finding for claimant would be based upon mere conjecture and speculation and not on substantial evidence." *Elliott v. Kansas City, Mo., Sch. Dist.*, 71 S.W.3d 652, 658 (Mo.App. W.D.2002). When "expert medical testimony is presented," "an ALJ's personal views of [the evidence] cannot provide a sufficient basis to decide the causation question, at least where the ALJ fails to account for the relevant medical testimony." *Van Winkle*, 258 S.W.3d at 898.

The sole medical testimony at the hearing came from Dr. Preston Brent Koprivica.[5] After physically examining Angus, reviewing Angus's medical history, and reviewing the reports of Dr. Killman and Dr. Whitely, Dr. Koprivica concluded that Angus is "permanently totally disabled." Dr. Koprivica further opined the following:

> Unrelated to the work injury claim of September 30, 2003, and ongoing exposure through February 7, 2004, it is my opinion that Mr. Angus has profound industrial disability based on likely rheumatoid arthritis ... In my opinion, there is no relationship between the inflammatory arthritis and his work place activities. For this pre-existent industrial disability, I would assign a fifty (50) percent permanent partial disability to the body as a whole.
>
> . . . .
>
> Separate from the rheumatoid arthritis, based on the progressive aggravating injury from the exposure to risk at work [degenerative osteoarthritis], I would assign a twenty-five (25) percent permanent partial disability to the body as a whole. I would clearly point out that I

---

5. In addition to Dr. Koprivica, two other doctors evaluated Angus's specific medical conditions, and both of these doctors made written findings giving specific medical opinions as to which type of arthritis caused his debilitating injuries. However, neither of these doctors' testimony nor their reports were admitted into evidence, and therefore the sole evidence regarding the *substance of their opinions* comes from Dr. Koprivica's occasional reference to them in making his ultimate medical conclusions. The first doctor, Dr. Whitley, was Angus's personal treating doctor prior to filing the instant workers' compensation claim, and Dr. Whitley apparently opined that his injuries were caused solely by osteoarthritis. The second doctor, Dr. Killman, was hired by the Employer to evaluate Angus for the sole purpose of litigating Angus's workers' compensation claim against the Employer. Dr. Killman opined that Angus's injuries were predominately the result of his rheumatoid arthritis, but even Dr. Killman conceded in his report that "[t]here may be some element of osteoarthritis, which may have been exacerbated to a small degree by his occupation."

Finally, it is also worth noting that Michael Dreiling also testified at the hearing as a vocational expert; however, because it has never been disputed in this litigation that Angus is totally and permanently disabled, we need not delve into the substance of this testimony.

would not consider Mr. Angus' work place exposure to be totally disabling, considered in isolation, in and of itself.

The bulk of the Commission's Final Award is directed at attacking Dr. Koprivica's professional medical opinions as "very weak," "not persuasive," "[un]substantiated," and "lack[ing] credibility." But before we respond to the *substance* of the Commission's critique of Dr. Koprivica's professional opinions, we must first determine whether the Commission usurped its role as a matter of law in expressly disregarding the above uncontradicted medical testimony and instead reaching its own conclusion regarding medical causation without the support of any expert medical testimony. Specifically, in rejecting Angus's claim, the Commission decided "to disbelieve and disregard" the opinion of Dr. Koprivica "that Mr. Angus' total disability results from the combined effect of rheumatoid arthritis and osteoarthritis" and "[i]nstead ... [find] that Mr. Angus' rheumatoid arthritis ... alone renders him permanently and totally disabled." We find that the Commission erred in so concluding.

The Missouri Supreme Court has expressly held that "[t]he commission may not substitute an administrative law judge's personal opinion on the question of medical causation of [an injury] for the uncontradicted testimony of a qualified medical expert" in cases where "[m]edical causation ... cannot be considered uncomplicated." *Wright*, 887 S.W.2d at 600. In *Wright*, a truck driver filed a workers' compensation claim after carrying a fifty pound fuel canister nearly two miles, which allegedly caused him to sustain a herniated disc in his neck. *Id.* at 598–99. Notwithstanding the fact that claimant presented the uncontradicted testimony of a medical doctor that his injury was caused by his work, the Commission denied compensa-

tion. *Id.* In reversing this order, the Missouri Supreme Court found the following:

Having concluded that Dr. Ketcherside's opinion is uncontradicted, the question becomes whether the rejection of that evidence based *solely* on knowledge and experience of the administrative law judge on the question of medical causation of injuries to the cervical spine may serve as a proper basis for rejecting such evidence. As a general rule, courts defer to the findings on technical matters within the expertise of administrative agencies....

... In line with the general tendency of administrative law to recognize the expertise of specialized tribunals, compensation boards may rely to a considerable extent on their own knowledge and experience in uncomplicated medical matters, and in such cases awards may be upheld without medical testimony or even in defiance of the only medical testimony.

Medical causation of a herniated disc of the spine cannot be considered uncomplicated. The commission may not substitute an administrative law judge's personal opinion on the question of medical causation of a herniated disc for the uncontradicted testimony of a qualified medical expert. Of course, it is possible that the existence or absence of injury and causation are so obvious from the physical facts that one of ordinary understanding may reject even unchallenged medical expert testimony to the contrary. In addition, an administrative law judge may have the expertise to know that a herniated disc may result from a cause other than trauma. However, the specific medical conclusion that a herniated disc in the neck due to trauma will always have immediate noticeable symptoms is not clear, simple or well recognized by lay persons and is not a

matter within the expertise of an administrative law judge.

*Id.* at 599–600 (citations omitted).

Likewise, here, the issue of Angus's dueling types of arthritis is a complex *medical* issue not within the expertise of an administrative law judge. Ultimately, it is the Commission's medical conclusion that "Mr. Angus's rheumatoid arthritis ... alone renders him permanently and totally disabled" that is divorced from both the law and facts applicable to this case. As a matter of law, the problem with the Commission's approach in rejecting Dr. Koprivica's uncontradicted opinion and, instead, adopting its own contrary medical opinion is that it makes the Commission the *de facto* medical expert in this regard, which is troubling because like in *Van Winkle* this conclusion is based on nothing more than "logic and common sense" when the subject matter at hand is far too complicated for such simple reasoning. 258 S.W.3d at 898.

Moreover, the Commission's conclusion in this regard is also troubling because *all* the medical evidence before it contradicted the Commission's ultimate medical conclusion. Specifically, three medical doctors evaluated Angus, and the Commission heard uncontradicted evidence that each one of these doctors opined that *both* types of arthritis caused Angus's injuries. Even the doctor hired by the Employer opined that Angus had osteoarthritis that was exacerbated to some extent by his occupation.[6] In short, there is absolutely no evidence in the record to support the Commission's finding that "Angus's rheumatoid arthritis and the profound affect it has had upon him alone renders him permanently and totally disabled." Therefore, the award is not supported by substantial, competent evidence and is contrary to the overwhelming weight of the evidence.

Finally, we must note that the Commission's expressed concerns regarding Dr. Koprivica's expert opinions are further not supported by the evidence. For example, the Commission concludes that Dr. Koprivica "never really substantiated his [ ] causation conclusions regarding Mr. Angus' work and his osteoarthritis" and "a clear diagnosis by Dr. Koprivica that Mr. Angus even had osteoarthritis is glaringly absent." We are at a loss as to how the Commission could be unclear as to Dr. Koprivica's diagnosis that Angus had osteoarthritis. Dr. Koprivica unequivocally testified that "[m]y opinion is that the workplace exposure risk was a substantial contributing factor to the permanent partial disability based on the multiple joint degenerative osteoarthritic involvement."

Moreover, Dr. Koprivica was equally clear as to why he believed Angus's work was a substantial factor in causing this osteoarthritis:

[Angus] also had degeneration in his joints that was more wear-and tear type

6. The Commission expressly stated that because neither Angus nor the Fund offered the reports from either doctor into evidence that it was "hesitant to make any findings based on snippets of their reports which simply were referenced by Dr. Koprivica" and that, therefore, the Commission was limited to "evaluating only Dr. Koprivica's opinions." Section 490.065.3 states that "[t]he facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable." To the extent that Dr. Koprivica relied on these experts' testimony and reports to reach his ultimate conclusions, the Commission was not free to disregard this properly admitted evidence. Accordingly, the fact that there was a universal consensus in this regard should have given the Commission pause before reaching a contrary medical finding.

of degeneration. And what I understood from him is that in his employment, he was doing physically demanding work, where he was pushing carts that he said weighed over 600 pounds. He said sometimes they weighed 1,000 pounds.... That's the workplace exposure or risk. And so he's pushing these very heavy carts that are on hard rubber steel wheels. And he said that that pushing of carts he associated with a significant progression of joint pain ... And he made a clear-cut subjective association between those joints getting worse with the amount of work he was doing. The more he did, the worse he got.

Keeping in mind that the Commission expressly "found Mr. Angus to be a credible witness and his situation is very tragic," we fail to see how the record supports the Commission's finding that Dr. Koprivica's testimony should be discounted.

Ultimately, the Commission has simply failed to articulate any reasonable basis to disregard the uncontradicted expert medical opinion before it and, instead, to create its own medical causation opinions without the aid or assistance from a qualified medical professional. Because the Commission failed to make a finding concerning causation within the bounds of the governing legal standards and the evidence before it, we must remand this matter to the Commission for it to make findings consistent with this opinion.[7]

## B. Whether The Second Injury Fund Is Liable

On remand, the Commission will also have to address the issue of whether the Second Injury Fund is liable for any of portion of Angus's injuries.[8]

The second injury fund is established to assist in the continuing fight against the unemployment of those who are sufferers of some disability at the time of their employment. The fund relieves an employer or his insurer of the responsibilities of liability to an employee for any disability which is not specifically attributable to an injury suffered while in the employment of that particular employer. The obvious, although not necessarily the only, basis for this type of legislation rests in the belief that an employer will not hire a job applicant for work involving danger to the extremities if that applicant has previously become disabled in an extremity. A man with only one leg might easily become permanently and totally disabled if he were to lose his other leg in the roundhouse, and his employer might choose to forego the risk of payments for this permanent and total liability by using the simple expedient of hiring another switchman. Therefore, the creation of such a fund, and they exist in many states, is a positive measure. It serves to encourage the hiring of individuals who are already disabled to an extent which might render them susceptible to further injury and disability.

James B. Slusher, *The Second Injury Fund*, 26 Mo. L.Rev. 328 (1961). In addition to trying to help employers and their insurers avoid liability, it should be noted that many of the disabled people the legis-

---

7. We do not believe it is necessary for the Commission to hold further evidentiary hearings or to allow the admission of additional medical evidence in light of the fact that there is sufficient medical evidence in the record for the Commission to make the requisite findings and conclusions.

8. This was an issue originally submitted to the ALJ for it to be addressed at the original hearing, but this issue was not resolved in light of the ALJ's ruling.

lature was trying to assist through the implementation of the Fund were members of the armed forces who were unemployed due to battle related injuries which left them partially disabled.

Pursuant to section 287.220, the Second Injury Fund is liable in certain cases of permanent disability where there is a preexisting disability. The Second Injury Fund is responsible for that portion of disability attributable to the preexisting condition. *Gassen v. Lienbengood,* 134 S.W.3d 75, 79 (Mo.App.2004). If a claimant establishes either that the preexisting partial disability combined with a disability from a subsequent injury to create a permanent and total disability or that the two disabilities combined result in a greater disability than that which would have occurred from the last injury alone, the Second Injury Fund is liable. *Id.* The worker's ability to compete in the open labor market is the determining factor as to whether the combination of injuries resulted in permanent and total disability. *Knisley v. Charleswood Corp.,* 211 S.W.3d 629, 635 (Mo.App.2007).

*Richardson v. Mo. State Treasurer,* 254 S.W.3d 242, 244 (Mo.App. E.D.2008).

In *Ball–Sawyers v. Blue Springs School District,* we recently outlined the following applicable legal standards:

Section 287.220 guides the Commission in determining when there is a previous disability that may be compensable from the Second Injury Fund. The Commis-

sion must first determine the degree of disability from the last injury alone. Preexisting disabilities are not relevant until this determination is made. If the last injury standing alone rendered [Angus totally disabled], then the Second Injury Fund has no liability. . . .

286 S.W.3d 247, 254 (Mo.App. W.D.2009) (citations omitted).

There is no dispute that Angus is permanently and totally disabled. Accordingly, it will be incumbent upon the Commission to first determine the degree of disability from Angus's "last injury." "The determination of a specific amount or percentage of disability awarded to a claimant is a finding of fact within the unique province of the Commission." *Landers v. Chrysler Corp.,* 963 S.W.2d 275, 284 (Mo.App. E.D.1997). We note that in rejecting Angus's claim, the Commission concluded that "even if I had found that he developed osteoarthritis—or that such was aggravated—at work, I nonetheless would have found that Mr. Angus was totally disabled by the virtue of his severe rheumatoid arthritis alone." For all of the reasons previously explained at length above, this conclusion was in error.[9] Therefore, on remand the Commission shall determine and proportion the degree of disability in accordance with the uncontradicted medical testimony.

Because Dr. Koprivica concluded that Angus's total and permanent disability was

9. From the ALJ's opinion, it appears that the Commission based this conclusion on Dr. Koprivica's "acknowledgment that Mr. Angus' rheumatoid arthritis alone could totally disable him," but this finding misconstrues the uncontradicted medical testimony before the Commission. Dr. Koprivica testified to the following on cross-examination: "There certainly has been progression with the rheumatoid arthritis up until today. And whether or

not that would be sufficient to totally disable him, I can say it's possible, but I can't tell you that it's—with a reasonable degree of medical certainty." Accordingly, based on the uncontradicted medical evidence, the Commission had no basis to conclude that Angus's rheumatoid arthritis alone totally disabled him because there was no medical causation testimony that opined this within a reasonable degree of medical certainty.

caused in part by rheumatoid arthritis (which may constitute a pre-existing condition), this medical opinion is suggestive of the fact that the Second Injury Fund may be liable for Angus's disability. "If a claimant establishes either that the preexisting partial disability combined with a disability from a subsequent injury to create a permanent and total disability or that the two disabilities combined result in a greater disability than that which would have occurred from the last injury alone, the Second Injury Fund is liable." *Richardson*, 254 S.W.3d at 244.

Here, Dr. Koprivica testified that there was a synthesis between both types of arthritis so that they created Angus's permanent total disability, which is precisely the situation wherein the Second Injury Fund may become liable. *Id.* While Dr. Koprivica testified that the genesis of his rheumatoid arthritis was not work related, Dr. Koprivica further opined that Angus's work made his rheumatoid arthritis *progress* to the extent that this condition, when combined with his osteoarthritis, left him totally disabled. Dr. Koprivica made this clear by stating that the sum of the two conditions was greater than their parts in that they caused a "significant enhancement of the combined disabilities." Otherwise, had Angus been suffering merely from a 25% osteoarthritis disability, Dr. Koprivica made clear that Angus would not be totally and permanently disabled.

Therefore, we remand this matter for findings and conclusions consistent with the guidance of this opinion and relevant Missouri law.[10]

### Conclusion

The judgment of the Commission, denying Angus's workers' compensation claim, is hereby reversed and remanded.[11]

All concur.

---

10. We do not wish to insinuate that the Second Injury Fund's liability is a foregone conclusion because there may be legal issues that have not been raised before this Court at this time.

11. Because Angus's First Point Relied On is dispositive of this appeal, we need not turn to the merits of his Second Point Relied On.