

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| CITY OF JENNINGS, and | ) | No. ED108393 |
| MISSOURI EMPLOYERS MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | Appeal from the Labor and |
| vs. | ) | Industrial Relations Commission |
| | ) | |
| SABRINA WILLIAMS, and | ) | |
| TREASURER OF THE STATE OF | ) | |
| MISSOURI, Second Injury Fund, | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | Filed:  July 28, 2020 |

Before James M. Dowd, P.J., Gary M. Gaertner, Jr., J., and Robin Ransom, J.

Opinion

City of Jennings ("Employer") and its insurer Missouri Employers Mutual

Insurance Company appeal the decision of the Labor and Industrial Relations

Commission ("Commission") affirming the award and decision of the Administrative

Law Judge ("ALJ") awarding permanent total disability benefits to Sabrina Williams

("Claimant").  Employer does not challenge the Commission's finding that Claimant is

permanently and totally disabled, but rather it challenges the Commission's findings both

that Claimant's permanent total disability was due to the work injury alone and thus that

Employer was solely liable for Claimant's disability benefits rather than apportioning

some of the liability to the Missouri Second Injury Fund ("Fund"). We reverse and remand for further proceedings in accordance with this opinion.

## Background

Claimant began working for Employer in March of 2000 as a corrections officer. On September 7, 2010, she was physically attacked by an inmate and beaten about her face, head, and back ("work injury"). She was taken to the hospital and released the same day. Claimant filed an amended claim for compensation against Employer and the Fund, asserting a permanent total disability on the basis of her psychiatric conditions of depression and anxiety that resulted from the work injury.

At a hearing before the ALJ, Claimant testified to the following. On September 7, 2010, she was preparing meal trays for inmates in an enclosed locked vestibule with the assistance of two inmates, when one of the inmates started hitting her about the face, knocking her to the ground where the inmate continued to hit and kick her. Another corrections officer tried to unlock the door but did not have the correct keys, and the attack continued until maintenance personnel arrived. Following the attack, Claimant experienced temporary swelling of her eye and face, had to have a broken tooth removed, experienced temporary slurred speech, and received several weeks of physical therapy for back pain. As well, she received psychiatric treatment for insomnia, anxiety, depression, and anger.

Claimant further testified that, while she had received psychiatric treatment before the work injury for depression and anxiety, both were made worse by the work injury. Specifically, she used to be outgoing and to go out with acquaintances, but after the work injury she did not like to be around people and would spend days in her room. She had

difficulties completing tasks, became nervous and fearful about leaving the house, especially alone, and was constantly checking to make sure doors and windows were locked. She had attempted suicide three times since the work injury.

Regarding her history of psychiatric treatment, Claimant testified she had a history of childhood trauma, including witnessing her father abuse her mother and being raped by a family member as a young teenager. She had attempted suicide one time as a teenager. Further, she testified that in 2007 and 2008 she took a year leave of absence from Employer following a stress-induced mild stroke,[1] stemming from a series of personality conflicts with various supervisors. At this time, she received diagnoses and treatment for depression and anxiety. Claimant agreed on cross-examination that she had experienced panic and anxiety attacks weekly since her teenage years through the work injury, which she had been able to deal with on her own. She also agreed that she had experienced episodes of untreated depression since a teenager through 2007, for which she would have to call in sick to work, and that she had been unable to work due to depression for two weeks prior to her stress-induced stroke in 2007. She testified that her depression and anxiety manifested in a lack of trust, conflicts with supervisors, anger, and difficulties with speech. Although she was receiving treatment for depression and anxiety between 2007 and 2010, she was able to complete tasks and leave the house alone. In the year leading up to 2010, she was on full duty with no work restrictions.

Claimant submitted the deposition testimony of Jennifer Brockman, M.D. ("Dr. Brockman"), in which Dr. Brockman testified to the following. After examining

---

[1] Claimant's medical records from 2007 demonstrate an MRA of her brain showed "[n]o evidence for an aneurysm, stenosis, or vascular anomaly."

Claimant, Dr. Brockman diagnosed Claimant with post-traumatic stress disorder ("PTSD") from the work injury; Major Depressive Disorder-Recurrent, which meant there had been multiple episodes during her lifetime; General Anxiety Disorder; Panic Disorder with Agoraphobia; and Conversion Disorder, Resolved, which referenced the physical manifestation in 2007 of Claimant's stress through stroke symptoms. Dr. Brockman testified Claimant had a permanent total disability from her psychiatric diagnoses stemming from a combination of the work injury and her pre-existing psychiatric conditions, noting Claimant's prior suicide attempt, her repeated conflicts with people in Employer's workplace, and her overall view and description of her employment prior to the work injury.

While Dr. Brockman noted that Claimant's pre-existing depression and anxiety had shown clinical improvement without intensive treatment and required minimal professional help, and that Claimant was comparatively better able to work and conduct normal life activities before the work injury, Dr. Brockman also noted that Claimant's patterns of occupational and personal conflict and negativity revealed pre-existing and ongoing psychological issues that impaired her ability to maintain employment before the work injury. Specifically, Dr. Brockman testified that Claimant's pre-existing depression and anxiety, her irritability, her social avoidance, and her personality had led to prior work conflicts or job changes in the past, including her 2007-2008 leave of absence from Employer. Dr. Brockman also agreed that Claimant's traumas in her childhood made her more likely to develop psychiatric symptoms after another trauma, in part because she had a very limited support network to help her cope with later traumas.

Claimant also submitted Dr. Brockman's Independent Medical Examination ("IME"), in which Dr. Brockman opined Claimant was "permanently and totally disabled from a psychiatric standpoint alone as a result of her symptoms." Dr. Brockman opined the work injury was both the prevailing factor in Claimant's PTSD and Panic Disorder with Agoraphobia and the prevailing factor in the exacerbation of her pre-existing psychiatric conditions, including Major Depressive Disorder-Recurrent and Generalized Anxiety Disorder. Dr. Brockman further opined Claimant had a pre-existing permanent partial disability due to her Major Depressive Disorder-Recurrent and her Generalized Anxiety Disorder. Dr. Brockman opined that all of the above conditions represented hindrances or obstacles to employment or reemployment.

At the hearing, Employer offered medical records evidence from Gregg Bassett, M.D, ("Dr. Bassett"), which established the following. Dr. Bassett is a psychiatrist who treated Claimant following her work injury. Dr. Bassett performed an IME in December 2010, and a supplemental IME in August 2012. In his 2010 IME, he opined that Claimant's work injury was the prevailing factor in her diagnosis of PTSD and in triggering the reactivation of her pre-existing propensity to develop conversion symptoms, specifically slurred speech, and also that she had a pre-injury history of Depressive Disorder and Anxiety Disorder. In his 2012 supplemental IME, Dr. Bassett opined that, as a consequence of the combination of pre-injury psychopathology and work-injury-related psychopathology, Claimant had an overall 40% psychiatric permanent partial disability, 75% of which was attributable to the work injury and 25% of which was attributable to the pre-existing psychopathology.

The ALJ determined Claimant was a credible witness, and it found Dr. Brockman to be more persuasive than Dr. Bassett in creating an informed opinion of Claimant's current psychological condition. In an amended decision, the ALJ awarded benefits after finding Claimant was rendered permanently and totally disabled due to her work injury alone. The ALJ determined Claimant's work injury resulted in her pathologies of PTSD and Panic Disorder with Agoraphobia, which, taken in isolation, rendered Claimant permanently and totally disabled. The ALJ acknowledged Claimant's pre-existing psychiatric conditions but found she had been able to maintain work and conduct normal life activities before the work injury. Moreover, the ALJ determined the work injury itself was so traumatic that the pre-existing psychiatric disability need not be considered because Claimant's psychiatric condition following the work injury "completely supplant[ed] her condition prior to the attack." The ALJ denied Claimant's claim against the Fund.

Employer appealed the decision, and the Commission affirmed the amended award and decision of the ALJ, which was attached and incorporated by reference, finding it was supported by competent and substantial evidence.[2] One member of the Commission dissented on the issue of Fund liability, arguing the ALJ should have also apportioned liability against the Fund. This appeal follows.

Standard of Review

We review the Commission's decisions for whether they are supported by competent and substantial evidence. *White v. Conagra Packaged Foods, LLC*, 535

---

[2] When the Commission affirms and adopts the award and decision of the ALJ, we review the ALJ's findings as adopted by the Commission. *Angus v. Second Injury Fund*, 328 S.W.3d 294, 297 (Mo. App. W.D. 2010)

S.W.3d 336, 338 (Mo. banc 2017). We will reverse only if: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. *Id.*; *see also* Section 287.495.1, RSMo. (cum. supp. 2005).[3] We do not view the evidence and reasonable inferences in the light most favorable to the award; rather "[t]he Commission's factual findings are binding and conclusive only to the extent they are supported by sufficient competent evidence." *Harris v. Ralls Cty.*, 588 S.W.3d 579, 594 (Mo. App. E.D. 2019); *see also Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). In determining whether there is competent evidence in the record to support the award, we examine the whole record. *Hampton*, 121 S.W.3d at 222–23. "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* at 223.

Discussion

Employer raises two points on appeal. In its first point on appeal, Employer argues the Commission erred in finding Employer was liable for permanent total disability benefits on the basis that Claimant's work injury was so traumatic that her pre-existing psychiatric conditions need not be considered; rather, Employer argues such a finding improperly substituted the judgment of the Commission for that of the expert medical witnesses on a complex medical issue, in that the uncontradicted testimony of an expert medical witness was that Claimant's permanent total disability was a result of both her pre-existing and her work-injury-related psychiatric conditions, and thus the

---

[3] All statutory references are to RSMo. (cum. supp. 2005), unless otherwise indicated.

Commission's finding was not supported by sufficient competent evidence. We agree.

In its second point, Employer argues the Commission misapplied the law in finding

Employer but not the Fund liable for permanent total disability benefits because, instead

of considering whether Claimant had a pre-existing permanent partial disability that

constituted a hindrance or obstacle to employment and that combined with the work

injury to cause a greater degree of disability than would have resulted in the absence of

the pre-existing partial disability, the Commission looked to whether Claimant was able

to maintain employment and engage in normal life activities before the work injury.

Because there is substantial overlap in our analysis of Points I and II, we address them

together.

Points I and II

The Fund compensates workers who are permanently and totally disabled as a

result of a combination of past disabilities and a subsequent primary work injury. Section

287.220. The purpose of the Fund is "to encourage employers to hire individuals who

have disabilities by relieving them of liability for an employee's disabilities not

attributable to an accident occurring while working for the employer." *Conception v.*

*Lear Corp.*, 173 S.W.3d 368, 371 (Mo. App. W.D. 2005). Fund liability arises when a

claimant has, at the time the claimant sustains the work injury, a pre-existing permanent

partial disability that was of such seriousness to constitute a hindrance or obstacle to

employment or re-employment. *Id.* A pre-existing disability constitutes a hindrance or

an obstacle where there is potential for "the pre-existing injury [to] combine with a future

work related injury to result in a greater degree of disability than would have resulted if

8

there was no such prior condition." *E.W. v. Kansas City Mo. Sch. Dist.*, 89 S.W.3d 527, 537 (Mo. App. W.D. 2002) (citation omitted) (reversed on other grounds).

Section 287.220 sets forth guidance to the Commission in determining when to find the Fund partially liable for a combination of the pre-existing disability and the primary work injury. *Palmentere Bros. Cartage Servs. v. Wright*, 410 S.W.3d 685, 691 (Mo. App. W.D. 2013); *see also* Section 287.220.[4] The Commission must first determine the degree of disability from the primary work injury alone. *Id.* After this first step is established, the Commission then determines which portion, if any, of the disability is attributable to the pre-existing injury. *See id.* "If the primary injury standing alone render[s] [the claimant] permanently and totally disabled, then the [Fund] has no liability and [the employer] is responsible for all of the compensation." *Id.* However, "[t]he Commission's factual findings are binding and conclusive only to the extent they are supported by sufficient competent evidence." *Harris*, 588 S.W.3d at 594. The record must include medical testimony or evidence supporting the Commission's finding of causation. *E.W.*, 89 S.W.3d at 537 ("[w]ithout medical testimony, any finding of

---

[4] Section 287.220 provides in relevant part:

> If any employee who has a preexisting permanent partial disability … receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree or percentage of disability … caused by the combination of the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability [that] would have resulted from the last injury had there been no preexisting disability. After the compensation liability of the employer for the last injury, considered alone, has been determined by the [ALJ] or the commission and the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time of the last injury was sustained shall then be determined by the [ALJ] or the commission and the degree or percentage of disability [that] existed prior to the last injury plus the disability resulting from the last injury, if any, considered alone, shall be deducted from the combined disability, and compensation of the balance, if any, shall be paid by the [Fund].

causation would be based on mere conjecture and speculation and not on substantial evidence") (citation and internal quotation marks omitted).

The Commission here, following *Palmentere*, concluded that Claimant's work injury caused her PTSD and Panic Disorder with Agoraphobia and that those two pathologies alone were so severe they resulted in her permanent total disability, completely supplanting her pre-existing psychological conditions. *See* 410 S.W.3d at 691. Because the Commission attributed the cause of Claimant's disability entirely to the work injury, it ended its analysis and did not consider whether Claimant's pre-existing conditions contributed to her disability, which would have implicated Fund liability. However, the Commission's conclusion that her permanent total disability was entirely caused by the work injury was not supported by sufficient competent evidence, and thus the Commission erred in failing to complete the analysis and determine the percentage of Fund liability.

Sufficient competent evidence is a minimum threshold, and the testimony of one witness, even if contradicted by the testimony of another witness, can meet the bar for sufficient competent evidence. *Harris*, 588 S.W.3d at 598. In the face of conflicting evidence, it is the right of the Commission to accept or reject some evidence over others, and to determine which evidence is more persuasive, and we defer to these determinations. *See id.* However, "[t]he commission may not substitute an [ALJ]'s personal opinion on the question of medical causation of [an injury] for the uncontradicted testimony of a qualified medical expert." *Angus v. Second Injury Fund*, 328 S.W.3d 294, 300 (Mo. App. W.D. 2010) (citation omitted). "When expert medical testimony is presented, an ALJ's personal views of [the evidence] cannot provide

10

sufficient basis to decide the causation question, at least where the ALJ fails to account for the relevant medical testimony." *Id.* (citation and internal quotation marks omitted). Likewise, where the record is silent on the Commission's findings on the weight of witness credibility and neither the claimant nor the testifying experts are contradicted or impeached, the Commission "may not arbitrarily disregard and ignore competent, substantial and undisputed evidence." *Hazeltine v. Second Injury Fund*, 591 S.W.3d 45, 59 (Mo. App. E.D. 2019) (citation omitted).

Here, Dr. Brockman testified Claimant had a permanent total disability from her psychiatric diagnoses stemming from a combination of the work injury and her pre-existing psychiatric conditions. As well, in her IME, Dr. Brockman opined the work injury was both the prevailing factor in Claimant's PTSD and Panic Disorder with Agoraphobia and the prevailing factor in the exacerbation of her pre-existing psychiatric conditions of Major Depressive Disorder-Recurrent and Generalized Anxiety Disorder. This evidence was neither contradicted nor impeached. Dr. Bassett, rather than disagreeing with Dr. Brockman, also testified that 75% of Claimant's disability was attributable to her work injury and 25% was attributable to her pre-existing psychopathologies. The ALJ explicitly found Dr. Brockman to be persuasive in creating an informed opinion of Claimant's current psychological condition. Nevertheless, contrary to the undisputed testimony of both medical experts that the cause of Claimant's disability was a combination of pre-existing conditions and her work injury, the ALJ found Claimant was disabled due solely to the work injury.

This is not a case of the ALJ rejecting the opinion of one medical expert in favor of another, which is permissible, *see Palmentere*, 410 S.W.3d at 691 (after Commission

found evidence of pre-existing conditions not credible, all credible evidence supported its finding that claimant's disability resulted from work injury alone); rather, the Commission disregarded the opinions of both medical experts that Claimant's pre-existing psychological conditions were partly responsible for the way Claimant responded to the work injury and thus contributed to her permanent total disability, in favor of its own opinion of the cause of Claimant's disability. The Commission focused on the nature of the work injury, referring to it as "a bloody beating that was reported to last [five] minutes or more" and comparing it to "a round in a professional boxing match[, which] only lasts three minutes." While Claimant's work injury was indeed horrific, the Commission can neither disregard the undisputed medical testimony without explanation, nor base its finding on its personal opinion unsupported by sufficient evidence. *See Hazeltine*, 591 S.W.3d at 59–60; *Angus*, 328 S.W.3d at 300. No medical expert testified the work injury was the sole cause of Claimant's permanent total disability, and the Commission gave no explanation for rejecting the undisputed medical evidence. Thus, the Commission erred in concluding Claimant's permanent total disability was attributable solely to the work injury and Employer was solely liable, because the award was not supported by sufficient competent evidence in the record. *See* Section 287.495.1.

Because the Commission erred in finding Claimant's permanent total disability was attributable solely to the work injury, it likewise erred in failing to consider what portion of Claimant's injury was attributable to her pre-existing permanent partial disability. *See* Section 287.220; *Palmentere*, 410 S.W.3d at 691. In Employer's second point, Employer challenges the Commission's conclusion that "[i]t [was] uncontested that

12

Claimant was able to maintain work and conduct normal life activities for many years." Employer argues this conclusion was a misapplication of the law because, instead of considering whether Claimant's pre-existing partial disability constituted a hindrance or obstacle to employment that could combine with a later work injury to cause a greater degree of disability than would have resulted without the pre-existing condition, the Commission focused on Claimant's ability to maintain employment or engage in normal life activities before the work injury. It seems less that the Commission employed the incorrect analysis, as Employer argues, than that it simply performed no analysis of Fund liability after incorrectly concluding Employer was solely liable, as discussed earlier. However, to the extent that the Commission did intend for its conclusion to serve as an explanation for not finding Fund liability, any such conclusion was error. Fund liability is implicated not based on "the extent to which the condition caused difficulty in the past but on the potential that it could combine with a work injury to cause a greater degree of disability than would have resulted without it." *Hazeltine*, 591 S.W.3d at 59 (citation omitted).

Regardless, it was error for the Commission not to consider whether Claimant's pre-existing conditions constituted a hindrance or obstacle such to implicate Fund liability. Considering the record as a whole, the uncontroverted medical evidence was that, at the time of the work injury, Claimant had a permanent partial disability that was so serious to constitute a hindrance or obstacle to employment or reemployment, in that it had the potential to combine with a future work injury to cause a greater degree of disability than would have resulted without the pre-existing condition. *See id.* at 59–60; *E.W.*, 89 S.W.3d at 537.

13

Specifically, Claimant testified that, before the work injury, she suffered from depression and anxiety that manifested in a lack of trust, conflicts with supervisors, anger, and difficulties with speech, and that periodically required her to take time off work. She further testified that in 2007 after a period of conflict with a supervisor, she was under so much stress she exhibited symptoms of a stroke and had to take a year off work. Likewise, Dr. Brockman testified that Claimant's pre-existing depression and anxiety, her irritability, and her social avoidance had, prior to the work injury, demonstrably impaired her ability to maintain employment. Dr. Brockman also testified that Claimant's pre-existing depression and anxiety made her less resilient, or more "fragile," and also that Claimant's traumas in her childhood made her more likely to develop psychiatric symptoms after another trauma, in part because she had a very limited support network to help her cope with later traumas, such as the work injury she incurred on September 7, 2010. Dr. Brockman specifically agreed that Claimant's pre-existing conditions could be characterized as an obstacle or hindrance to employment. The ALJ found that Claimant and Dr. Brockman were both credible witnesses yet disregarded their uncontested testimony, which it may not do without explanation. *See Hazeltine*, 591 S.W.3d at 59–60.

The very purpose of the Fund is to ensure employers are not held solely liable for a previously disabled employee's total permanent disability where a portion of that disability can be attributed to a pre-existing disability. *See Conception*, 173 S.W.3d at 371; *E.W.*, 89 S.W.3d at 538. The uncontradicted testimony here demonstrated Claimant's pre-existing partial disability constituted a hindrance or obstacle to employment or re-employment in that her pre-existing depression and anxiety combined

14

with the PTSD and Panic Disorder with Agoraphobia resulting from the work injury to bring about a greater degree of disability than would have resulted if there had been no such prior condition, thus triggering Fund liability.  *See Conception*, 173 S.W.3d at 371; *E.W.*, 89 S.W.3d at 537.  Thus, the weight of the evidence established that a portion of Claimant's permanent total disability was attributable exclusively to her pre-existing psychological conditions and could not be attributed to the work injury, and the Commission's award finding Employer solely liable was not supported by substantial competent evidence.  *See Harris*, 588 S.W.3d at 594.

<u>Conclusion</u>

We find the Commission's award was not supported by competent and substantial evidence in the record before us.  Rather, the record as a whole demonstrates that Claimant's pre-existing permanent partial disabilities were serious enough to constitute a hindrance or obstacle to her employment or reemployment, and that she is permanently and totally disabled due to a combination of her pre-existing permanent disabilities and her work injury.  Thus, the Fund is also liable for a portion of Claimant's permanent total disability.  We reverse and remand for the Commission to determine the proper amount of the Fund's liability and enter an award in accordance with this opinion.

_____
Robin Ransom, Judge

James M. Dowd, P.J., and
Gary M. Gaertner, Jr., J., concur.

15