Alan **LEAKE**, Deceased; Linda Leake, Respondent,

v.

**CITY OF FULTON**, Appellant.

No. WD 71821.

Missouri Court of Appeals, Western District.

July 27, 2010.

Rehearing Denied Aug. 31, 2010.

Clare R. Behrle, St. Louis, MO, for Respondent.

Susan M. Turner and C. Travis Hargrove, Jefferson City, MO, for Appellant.

Before Division II: JOSEPH M. ELLIS, Presiding Judge, and ALOK AHUJA and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

The City of Fulton ("Fulton") appeals from a final order of the Labor and Industrial Relations Commission ("Commission") awarding benefits to Linda Leake ("Widow"), the widow of decedent Alan Leake ("Leake"). We affirm the order of the Commission.

## Procedural and Factual Background

Leake was a captain with the Fulton fire department and had been with the department for twenty years. On April 30, 2006, Leake was called to the scene of a three-car automobile accident. While no one in the accident was badly injured, one of the automobiles involved had to be removed from the roadway, and Leake and two others pushed the vehicle to the side of the road. During the time that Leake was assisting at the scene of the accident, the light rain that had been falling became very heavy, and hail started to fall. The rain was so heavy that it ran into the raincoat of police officer Mark Moses, who was also assisting with the accident, and it shorted out his radio. Shortly after the vehicle had been removed from the roadway, Officer Moses and Leake were dispatched to a more serious accident nearby.

The second accident was a single truck that had skidded off of a highway, gone over a guardrail, and tumbled to the bottom of a steep embankment. The driver of the truck had been ejected on the way down the embankment and had come to rest in an algae-covered concrete drainage ditch, right next to his truck. By this time the rain had ended and the sun had come out, making the air hot and humid.

Leake scrambled down the steep embankment through shin-deep thick wet grass to get to the ejected driver. Leake, Officer Moses, and others began performing CPR on the man, with Leake using the rescue breathing bag. The rescue efforts were especially difficult because of the large size of the driver, the fact that the driver's airway and the breathing device were obstructed with the man's vomit, the fact that the driver was wedged against his vehicle, the wet and slippery condition of the concrete drainage ditch, and the hot, humid weather. The rescuers worked frantically for some time until the ejected driver was able to be put on a backboard. Then Leake and the other rescuers carried the man up the other side of the embankment to a waiting ambulance. This side of the embankment was less steep, but longer in distance. The trip up the embankment was difficult, and Leake slipped once on the way. When the man had been placed into the ambulance, Leake returned to the bottom of the culvert to retrieve his tools and then climbed back up the steep side of the embankment to get back to his vehicle.

When Leake reached the road, he climbed back over the guardrail and asked for some alcohol to clean his hands. Then, suddenly, he said that he felt dizzy, the color left his face, and he collapsed. Officer Moses believed that Leake was possibly having a heat stroke because of the weather, their exertion, and the fact that Leake was wearing his firefighting gear, which consisted of large rubber boots, heavy insulated pants, a heavy insulated coat, a shirt, and a helmet. The other rescuers on the scene removed Leake's firefighting gear and began trying to resuscitate him. Although he briefly began breathing again, the attempts to save his life were ultimately unsuccessful, and Leake died at the scene.

Widow applied to the Division of Workers' Compensation for death benefits following Leake's death. At the hearing, Widow testified that Leake had not been diagnosed with or treated for any heart disease before his death. Widow also testified that Leake had been able to perform his job without any difficulties and that he had been fairly active outside of his employment, doing work around the house and boating.

Leake's medical records were also admitted into evidence and showed that Leake had not been diagnosed with or treated for heart disease. They indicated that Leake had been recommended to follow a healthy diet and to stop smoking, but he had not been placed on any medications for cholesterol reduction or blood pressure control.

Officer Moses testified at the hearing. He relayed the events as set forth above and offered that in his twelve years as a police officer, the April 30, 2006 vehicle rescue that he and Leake worked was the most physically demanding and emotionally challenging that he had ever experienced. Moses also testified that, as a member of the SWAT team and a former bicycle patrol officer, he had been in good physical shape but that he had never before felt fatigue at the level he experienced following the April 30 rescues. Moses left the Fulton police force shortly after Leake's death and now works as a fraud investigator for the Division of Workers' Compensation.

Dr. Jerry Kennett, an expert for Fulton, reviewed Leake's medical records and his autopsy report and concluded that Leake's death was primarily caused by his underlying cardiovascular disease. Dr. Kennett opined that while the work Leake was doing on the day of his death may have been a contributing factor, it was not the major factor that led to his death. Dr. Kennett testified that Leake had a thickened heart muscle with blockage in the three main coronary arteries and that Leake had suffered a prior heart attack, although Leake was apparently not aware of the prior heart attack.

Dr. Stephen Schuman, Widow's expert, also reviewed Leake's medical records and his autopsy report, as well as the statements of Leake's co-workers, and concluded that, although not in optimal health, Leake was medically stable during the time leading up to his death because he had been able to go about his business and work activities without any symptoms. Dr. Schuman opined that Leake would have been able to continue his activity level had it not been for the events of April 30, 2006. Dr. Schuman opined that there were significant, unusual physical exertions on the day in question, emotional stress associated with responding to a severe car accident, and hot and humid weather in which the body cannot dissipate heat, and that all of those factors combined to increase demand on the cardiovascular system for enhanced cardiac output. Dr. Schuman explained that the heart muscle

requires more blood flow to sustain the extra work, and if there is any restriction of blood flow because of coronary artery blockage, that blood flow cannot increase to the level that the demand increases, causing a supply-demand imbalance. This creates an electrical instability, which in turn causes a serious arrhythmia, or irregular beating, the most severe type of rhythm abnormality. It was Dr. Schuman's opinion that this electrical instability was the cause of Leake's death. Dr. Schuman concluded that if the demand had not been there, in the form of the physical exertion, emotional stress, and environmental factors, the electrical event would not have occurred and, thus, that Mr. Leake's work was the prevailing factor causing his death.

Both experts seemed to agree that Leake's death was not caused by a heart attack but was the result of an episode of ventricular fibrillation—the rhythm abnormality. Both experts also agreed that both Leake's underlying, although previously undetected, cardiovascular condition and the conditions of Leake's work combined to cause the cardiac episode leading to Leake's death. The experts just disagreed about which factor was the prevailing cause.

The Administrative Law Judge ("ALJ") denied benefits, finding that the events and conditions of Leake's employment on April 30, 2006, were not the "prevailing factor" causing Leake's death, but that Leake's death was primarily attributable to his underlying heart disease. Widow filed a timely application for review with the Commission, and the Commission overturned the decision of the ALJ and awarded Widow benefits. City now appeals to this court.

## Standard of Review

■ We review the Commission's order pursuant to article V, section 18 of the Missouri Constitution, to determine whether the Commission's award is "supported by competent and substantial evidence upon the whole record." *See also* § 287.495.1 RSMo 2000.[1] An award is supported by competent and substantial evidence so long as it is not "contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003).

## Legal Analysis

■ Fulton appeals the order of the Commission, claiming that the Commission's award of benefits was not supported by competent and substantial evidence and was against the overwhelming weight of the evidence because there was evidence that, absent Leake's pre-existing coronary artery disease, he would not have died on April 30, 2006.

The Commission's order notes, at the outset, that because Leake's fatal injury occurred on April 30, 2006, it falls under the purview of the 2005 amendments to the Missouri Workers' Compensation Law. For an award of benefits to be appropriate, the 2005 amendments require that the workplace "accident" was the "prevailing factor" or primary factor in causing the injury and the disability (in this case, the ventricular fibrillation that caused Leake's death). § 287.020.3(1). In other words, Leake's death must not have "come from a hazard or risk unrelated to the employment to which [Leake] would have been equally exposed outside of and unrelated to the employment in normal nonemployment life." § 287.020.3(2)(b). Specifically, "cardiovascular ... disease ... suffered by a worker is an injury only if the acci-

---

1. All statutory references are to RSMo 2000, unless otherwise noted.

dent is the prevailing factor in causing the [death]." § 287.020.3(4).

Prior to the 2005 changes in the Workers' Compensation Law, an employee's work only had to be a "substantial factor" and not the "prevailing factor." § 287.020.3(2)(a). The 2005 changes also required the Commission and the courts to construe the law "strictly" rather than liberally in favor of coverage the way it had been before the revisions. § 287.800. Therefore, the employee's burden in establishing that his injury is compensable is now higher than it was before the changes in the law. In briefing to this court, Fulton urges that we find Leake's underlying health conditions prevent a finding that any employment-related accident could possibly have been the prevailing factor causing his death. Similarly, at oral argument, Fulton initially suggested that pre-existing cardiovascular disease that contributed to a workplace injury or death would always be the prevailing factor. Thus the existence of cardiovascular disease would bar recovery under section 287.020. We disagree.[2] That underlying cardiovascular disease does not always preclude recovery is inherent in section 287.020.3(4)'s recognition that a "cardiovascular disease" can constitute an "injury," "if the accident is the prevailing factor in causing the resulting medical condition." Where, as here, both a pre-existing cardiovascular condition and a work-related activity contribute to cause an employee's injury or death, the question is which of the contributing factors was "the primary factor, in relation to [the] other factor,

causing . . . the resulting" injury or death. § 287.020.3(1). The determination of whether a particular accident is the "prevailing factor" causing an employee's condition (in this case, death) is inherently a factual one (a proposition with which Fulton's counsel agreed at oral argument).[3] We see no reason not to defer to the Commission's factual finding in this case. *See Endicott v. Display Techs.*, 77 S.W.3d 612, 615 (Mo. banc 2002).

Two different expert opinions served as evidence in Leake's case. Both experts testified that Leake's pre-existing, although previously unknown, cardiovascular condition combined with circumstances surrounding his job duties on April 30, 2006, to cause Leake's death. Leake's expert, Dr. Schuman, testified, by deposition, that the events and conditions of the rescues on April 30, 2006, taken together, was the prevailing factor leading to Leake's death. Fulton's expert, Dr. Kennett, testified that Leake's pre-existing cardiovascular disease was the prevailing factor in Leake's death. The Commission fully considered both expert opinions, along with the evidence supporting them, and concluded that Dr. Schuman's opinion was more credible and better supported. Fulton has not established that the Commission's conclusion was against the overwhelming weight of the evidence, and therefore, even under the more stringent standards, it is supported by competent and substantial evidence on the record as a whole.

2. Later during argument, counsel for Fulton acknowledged that, where more than one factor contributed to a workplace death or injury, the phrase "prevailing factor" would require a comparison of contributing factors to determine which was the "prevailing" or "primary" factor that caused the injury or death.

3. Recognizing that the "prevailing factor" determination is a factual question is consistent with the interpretation of the "substantial factor" criterion of prior law. *See, e.g., Van Winkle v. Lewellen's Prof'l Cleaning, Inc.*, 258 S.W.3d 889, 898 (Mo.App. W.D.2008) (citing *Royal v. Advantica Rest. Group, Inc.*, 194 S.W.3d 371, 376 (Mo.App. W.D.2006)).

First, as Dr. Schuman pointed out, Leake had never even been diagnosed with any cardiovascular disease. He had never presented with any symptoms of his condition. In fact, Leake had apparently suffered a heart attack at some time in the past without ever having realized it. Leake had not been treated for high blood pressure or high cholesterol. Although Leake's physician had advised him to quit smoking and follow a healthy diet, the advice was no different than that which any physician would offer to a moderately overweight patient who smoked and did not appear to be in response to any particular complaints that Leake was presenting at the time.

Moreover, both Officer Moses and Widow testified that Leake had been able to perform all of the duties that his job required without problems or difficulty prior to April 30, 2006. Moses had stated that he had witnessed Leake carry heavy hoses and perform physically demanding labor in the past. Widow testified that Leake was active outside of work doing things around the house and boating.

Finally, the testimony established that the April 30 rescues were not typical of the conditions Leake faced in the course of his employment. Moses, who often worked on rescues with Leake, testified that, in the twelve years that he had been on the police force, the April 30, 2006 rescue was the most physically demanding and emotionally challenging that he had experienced.

All of the above evidence would support Dr. Schuman's conclusion, accepted by the Commission, that he could "[a]bsolutely" say, to a reasonable degree of medical certainty, that Leake would not have had the cardiac event if he had not been exposed to the extraordinary physical and mental stress related to performing his work duties on April 30, 2006. Even Dr.

Kennett's analogy of Leake's heart condition being like a rusty bridge that finally gives under a great weight supports the conclusion that, absent the weight, the bridge would continue to stand, or that, absent the demanding April 30 situation, Leake's heart would have continued to function. Fulton's counsel acknowledged at argument that Dr. Kennett's testimony would itself support a finding that the events of April 30 were a "substantial" factor in causing Leake's death; he merely disagreed that the environmental factors were the "prevailing" cause. Even if a contrary result could have been reached by the Commission, we are unable to say, based upon our review of the entire record, that the Commission's order was not supported by competent and substantial evidence. Therefore, we affirm the award of the Commission.

JOSEPH M. ELLIS, Presiding Judge, and ALOK AHUJA, Judge, concur.