**Corrected Opinion
July 8, 2024**



# *In the*
## Missouri Court of Appeals
### *Western District*

| | | |
|---|---|---|
| **JUAN FERNANDEZ,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD86421** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **MAY 28, 2024** |
| **SMITHFIELD FOODS, INC.,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Labor and Industrial Relations Commission**

Before Division Three:  Cynthia L. Martin, Presiding Judge, Mark D. Pfeiffer, Judge and Edward R. Ardini, Jr., Judge

Juan Fernandez ("Fernandez") appeals from the Labor and Industrial Relations Commission's ("Commission") final award denying his claim for workers' compensation benefits relating to an injury suffered to his left knee.  Fernandez argues on appeal that the Commission was without jurisdiction to review the temporary award of workers' compensation issued by an administrative law judge.  Fernandez alternatively asserts that the Commission erred in denying his claim for workers' compensation because his doctor's testimony was sufficient to establish that an accident was the prevailing factor in causing Fernandez's medical condition and disability even though the doctor never used the phrase "prevailing factor," and because the overwhelming weight of the evidence

established that Fernandez's accident was the prevailing factor in causing Fernandez's medical condition and disability. Finding no error, the Commission's final award is affirmed.

**Factual and Procedural History**[1]

Fernandez began working for Smithfield Foods, Inc. ("Smithfield Foods"), a pork processing plant in Kansas City, Missouri, in 2014. Fernandez worked for Smithfield Foods for nearly eight years as a laborer on the facility's production floor. Fernandez worked eight-hour shifts, during which he stood in order to lift and cut hams weighing up to approximately thirty-five pounds. Fernandez received two 15-minute breaks, one in the morning and one in the afternoon, and a 30-minute lunch break every day.

On February 22, 2021, Fernandez took his morning break. To reach the facility's break room from the facility's production floor, employees had to climb stairs to the main floor before going down another set of stairs to the break room. On the way to the break room that morning, Fernandez was walking down the stairs when he lost his footing. Fernandez was able to keep himself upright while holding on the railing, but his left foot "skidded" down three steps. Fernandez reported the fall to his supervisor, completed his workday, and returned home. While at home, Fernandez noticed that his left knee was swollen.

---

[1]When reviewing the Commission's final award, we review the facts neutrally, neither viewing the facts in the light most favorable to the award nor making all reasonable inferences in the light most favorable to the Commission's final award. *Lamy v. Stahl Specialty Co.*, 649 S.W.3d 330, 332 n.1 (Mo. App. W.D. 2022). If, however, the Commission has made credibility determinations, we are bound by such determinations when evaluating the facts. *Id.*

The next day, February 23, 2021, Fernandez went to work, but he experienced pain in his left knee while working on the facility's production floor. Fernandez went to his supervisor's office and reported the pain in his left knee. Fernandez's supervisor told him to visit the nurse's station located in the processing plant. A nurse examined Fernandez's knee and "placed something on [his] knee . . . like a hot pack" while Fernandez rested. There was a shortage of meat to process that day. When the supervisors asked for volunteers to go home for the day, Fernandez volunteered to do so though his seniority would have permitted him to stay.

Fernandez returned to work on February 24, 2021, and again visited the nurse's station complaining about pain in his left knee. The nurse drove him to Concentra, an occupational medicine provider, for examination at Smithfield Foods's expense. The physician assistant who examined Fernandez diagnosed him with a strain to his left knee, prescribed medication, ordered Fernandez to use a cane, instituted work restrictions requiring Fernandez to sit 100 percent of the time, and cleared Fernandez to return to work that day. The physician assistant also ordered an MRI on Fernandez's left knee. The next day, February 25, 2021, Fernandez worked a full day, accommodated by the restrictions put into place by the physician assistant.

Fernandez was examined by a doctor at Concentra on February 26, 2021, at Smithfield Foods's expense. The doctor directed Fernandez to continue taking the medications prescribed, to continue using a cane, and to continue the work restrictions instituted by the physician assistant. The doctor also gave Fernandez a knee brace.

Fernandez returned to Concentra at Smithfield Foods's expense on March 5, 2021. The physician assistant who treated Fernandez that day noted that the order for an MRI was still pending, and advised Fernandez to continue with the prescriptions, orders, and work restrictions provided during Fernandez's two earlier visits.

Smithfield Foods's worker's compensation insurer denied coverage for Fernandez's claim. As a result, the MRI ordered by Concentra's medical providers was never authorized by the insurer. Neither Smithfield Foods nor the worker's compensation insurer paid any other benefits to Fernandez or on his behalf. Given the denial of Fernandez's claim by the insurer, Fernandez's work restrictions were not further accommodated. Fernandez's last day of employment with Smithfield Foods was March 17, 2021.

After the insurance company's denial of his claim, Fernandez sought medical treatment from his own doctor on March 29, 2021. The doctor ordered an MRI on Fernandez's left knee. The MRI, which was performed on March 30, 2021, revealed that Fernandez was suffering severe lateral patellofemoral osteoarthritis in his left knee. Fernandez paid $50 for the doctor's visit and $300 for the MRI of his left knee.

Fernandez filed a claim with the Division of Worker's Compensation ("the Division") on May 18, 2021, and Smithfield Foods filed an answer denying all liability and compensation on May 21, 2021. An administrative law judge ("ALJ") held a hardship hearing on October 12, 2022. Fernandez and Smithfield Foods agreed that the issues to be resolved by the ALJ were as follows: (1) "whether [Fernandez] sustained an injury by accident arising out of and in the course of employment"; (2) "whether

4

[Fernandez] is entitled to temporary total disability payments from March 18, 2022 to present and ongoing"; (3) "[w]hether [Smithfield Foods] must reimburse [Fernandez] for medical expenses totaling $350"; and (4) "whether [Smithfield Foods] must provide [Fernandez] with additional medical care."

Fernandez testified at the hardship hearing about his fall on the stairs, and that prior to February 22, 2021, he had never visited either Smithfield Foods's nursing station or his own doctor for problems related to either of his knees. Fernandez further testified that his doctor informed him that he needed to see an orthopedic surgeon about the possibility of surgery on his left knee. In addition to Fernandez's testimony, the ALJ received exhibits from both parties, including Fernandez's medical records, and reports and depositions from two doctors who evaluated Fernandez.

Dr. Z., a physician, performed a medical evaluation at Fernandez's request on September 15, 2021. Dr. Z concluded that Fernandez had not yet achieved maximum medical improvement and that additional medical treatment would be required in the future. Dr. Z. opined that Fernandez might benefit from physical therapy, nonsteroidal anti-inflammatory medications, injections of a steroid and a local anesthetic, or orthopedic treatments, including surgery, for his left knee. During his deposition, Dr. Z. testified that it is not unusual for a person with patellofemoral osteoarthritis to be asymptomatic but then to develop pain after an incident. Dr. Z. testified that he believed to a reasonable degree of medical certainty that the current condition of Fernandez's left knee was the result of the accident during which Fernandez fell and jarred his left knee on the steps at Smithfield Foods's pork production plant.

5

Dr. S., an orthopedic surgeon, was retained by Smithfield Foods's insurer to perform a medical evaluation of Fernandez on May 2, 2022. Dr. S. wrote a report and testified about his findings, all of which were based on a reasonable degree of medical certainty. Dr. S. opined that Fernandez's "underlying arthritic changes, combined with his underlying obesity, are likely the source of his persistent difficulties and problems." Dr. S. determined that the arthritic changes to Fernandez's left knee preexisted the February 22, 2021 accident, that the symptoms were "aggravated at the time of the incident," but that the arthritis itself was not caused by or worsened by the February 22, 2021 accident. Dr. S. further opined that Fernandez "did not sustain any permanent partial impairments or disability" as a result of the February 22, 2021 incident so that the permanent partial disability rating for Fernandez's left knee is 0 percent. Dr. S. believed that the treatment that Fernandez received for his left knee injury was appropriate and that concluding such treatment was appropriate. Dr. S. believed that Fernandez has reached maximum medical improvement from the injury to his left knee that occurred on February 22, 2021.

The ALJ issued a temporary award on November 30, 2022 ("ALJ Temporary Award"). The ALJ Temporary Award recited the evidence presented at the hardship hearing and found that Fernandez's testimony was credible. The ALJ found that Fernandez suffered an injury by accident while in the course and scope of his employment; that Smithfield Foods owes Fernandez $350 for the MRI and consult fee he paid for; that because the slip down the stairs aggravated Fernandez's underlying preexisting condition, Smithfield Foods was required to provide Fernandez with

6

additional medical care; and that because Fernandez's injury is compensable and occurred within the course and scope of his employment, Fernandez was entitled to temporary total disability benefits from March 18, 2021, and continuing until Fernandez has been released from medical care.

Smithfield Foods sought review of the ALJ Temporary Award from the Commission. Smithfield Foods asserted that the ALJ's finding that Fernandez suffered an injury by accident while in the course and scope of his employment is unsupported by competent and substantial evidence, and that as a result, it had no workers' compensation liability. Fernandez filed a motion to dismiss Smithfield Foods's application for review ("Motion to Dismiss"), arguing that the Commission had no authority to review the ALJ Temporary Award because Smithfield Foods had already paid for some of Fernandez's medical care, and was thus merely disputing the extent and duration of Smithfield Foods's liability, and not whether it had liability. Smithfield Foods responded to Fernandez's Motion to Dismiss, arguing that it was disputing liability for Fernandez's injury, and was not foreclosed from doing so by paying for minimal preliminary medical care for Fernandez.

The Commission issued a final award reversing the ALJ Temporary Award and denying compensation ("Final Award") on June 20, 2023. The Final Award denied Fernandez's Motion to Dismiss. The Commission concluded that Smithfield Foods was denying all liability for Fernandez's claim, and that its provision of initial medical care through the facility's nurse and Concentra did not preclude Smithfield Foods from seeking review of the ALJ Temporary Award. The Final Award observed that Fernandez

7

bore the burden of establishing medical causation by "scientific or medical evidence showing the relationship between the complained-of medical condition and the asserted cause of the condition." The Final Award further noted that an accident must be the prevailing factor, that is the primary factor, in causing the resulting medical condition and disability in order for the accident to be compensable.

The Final Award focused on whether the accident had been demonstrated to be the prevailing factor resulting in Fernandez's injury--that is his medical condition and disability. The Final Award found that neither Dr. Z. nor Dr. S. opined that Fernandez's February 22, 2021 work injury was the prevailing factor in causing Fernandez's left knee pain and discomfort. In particular, the Final Award concluded because Dr. Z. "vaguely described" the condition of Fernandez's left knee as "pain and discomfort due to inflammation," Dr. Z.'s report and testimony did not establish that the February 22, 2021 accident was the prevailing factor in causing both Fernandez's medical condition and disability. The Final Award found Dr. S.'s report and testimony to be "the most persuasive and credible evidence in the record on the issue of medical causation of [Fernandez's] current left knee complaints." In particular, the Final Award relied on Dr. S.'s opinion that Fernandez suffered from "severe degenerative joint disease" prior to February 22, 2021, and that the "underlying arthritic changes [to Fernandez's left knee], combined with his underlying obesity, are the likely the source of [Fernandez's] persistent difficulties and problems." As such, the Commission found that Fernandez failed to meet his burden on the issue of medical causation and denied compensation.

Fernandez appeals.

8

## Standard of Review

Article V, section 18 of the Missouri Constitution allows for appellate review of the Final Award issued by the Commission to determine whether the decision is authorized by law and whether the decision is "supported by competent and substantial evidence upon the whole record." Section 287.495.1[2] provides further guidance for reviewing the Final Award:

> Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

We review the Commission's interpretation and application of the law *de novo*. *Steinbach v. Maxion Wheels, Sedalia, LLC*, 667 S.W.3d 188, 195 (Mo. App. W.D. 2023). When determining whether the Commission's award is supported by sufficient competent evidence, we consider the record as a whole, viewing it objectively and not in the light most favorable to the award. *Id.* However, if the Commission makes findings about the weight or credibility of the evidence, we must defer to those findings. *Id.*

## Analysis

---

[2]All statutory references are to RSMo 2016 as supplemented through February 22, 2021, unless otherwise indicated.

Fernandez presents three points on appeal.  Fernandez's first point disputes the Commission's denial of his Motion to Dismiss, and thus challenges the Commission's authority to review the ALJ Temporary Award.  Alternatively, Fernandez's second and third points dispute the Commission's findings that he failed to sustain his burden to establish that his accident was the prevailing factor in causing his resulting medical condition and disability.

***Point One: Commission's Authority to Review the ALJ Temporary Award***

In his first point on appeal, Fernandez asserts that the Commission erred as a matter of law in that it acted in excess of its power in reviewing and reversing the ALJ Temporary Award.  The Commission, as a statutorily created entity, has only the jurisdiction and authority set forth by statute.  *Davidson v. Davidson Masonry & Constr., LLC*, 583 S.W.3d 517, 519 (Mo. App. W.D. 2019).  Section 287.480.1 gives the Commission the statutory authority to review an ALJ award if an application for review is filed within twenty days of the entry of the ALJ award.

The Commission has also promulgated rules regarding its authority to review ALJ awards.  *See Motor Control Specialties, Inc. v. Labor & Indus. Rels. Comm'n*, 323 S.W.3d 843, 851 (Mo. App. W.D. 2010) (finding that the Commission's promulgation of regulations regarding its review of ALJ awards is consistent with section 287.480.1).  With respect to final awards entered by an ALJ, 8 C.S.R. section 20-3.030(1) permits any interested party to appeal from a final award, order, or decision made by an ALJ by making application for review to the Commission within twenty days of the date of the

10

award.  With respect to temporary or partial awards entered by an ALJ, 8 C.S.R. section

20-3.040 provides:

> (1) Whenever an administrative law judge issues a temporary or partial award under section 287.510, RSMo, the same shall not be considered to be a final award from which an application for review . . . may be made.  The time for making an application for review shall not commence until a final award is issued by the administrative law judge in cases where a temporary or partial award has been issued.

> (2) Any party who feels aggrieved by the issuance of a temporary or partial award by any administrative law judge may petition the commission to review the evidence upon the ground that the applicant is not liable for the payment of any compensation and especially setting forth the grounds for the basis of that contention and where the evidence fails to support findings of the administrative law judge as to liability for the payment of compensation.  The commission will not consider applications or petitions for the review of temporary or partial awards where the only contention is as to the extent or duration of the disability of the employee for the reason that the administrative law judge has not made a final award and determination of the extent or duration of disability.

Thus, an application seeking Commission review of a temporary or partial award entered

by an ALJ is only permitted to challenge the foundational issue of liability, and not the

extent or duration of disability.

The Commission concluded that Smithfield Food's application for review of the

ALJ Temporary Award challenged the foundational issue of liability to Fernandez under

the Workers' Compensation Law.  The Commission concluded that Smithfield Foods's

provision of early medical treatment to Fernandez through Concentra did not preclude

Smithfield Foods from contending it was not liable to pay any workers' compensation

benefits to Fernandez.  The Commission thus concluded that it had the authority to

review the ALJ Temporary Award pursuant to 8 C.S.R. section 20-3.040(2).

11

Fernandez's point on appeal challenges the Commission's conclusion regarding its authority to review the ALJ Temporary Award pursuant to 8 C.S.R. section 20-3.040(2). Fernandez claims that, by providing Fernandez early medical treatment, Smithfield Foods waived its ability to challenge the ALJ Temporary Award on the basis that it had no liability for Fernandez's injury. Fernandez thus argues that Smithfield Foods's challenge of the ALJ Temporary Award can only be viewed as an objection to the extent and duration of Smithfield Foods's liability, and that challenges of that nature cannot be reviewed by the Commission prior to the entry of a final award.

Fernandez relies on *Jennings v. Crestside Heating & Cooling*, 142 S.W.3d 843 (Mo. App. E.D. 2004), and *Alcorn v. McAninch Corp.*, 236 S.W.3d 111 (Mo. App. S.D. 2007), to support his contention that an employer's provision of benefits to an injured employee waives, as a matter of law, the employer's ability to seek review of a temporary workers' compensation award by denying all liability. *Jennings* and *Alcorn* do not so hold. Both cases address *appellate* jurisdiction to review a temporary workers' compensation award, and not the limited authority expressly afforded to the Commission to entertain review of a temporary award pursuant to 8 C.S.R. section 20-3.040(2). These cases nonetheless have limited utility, however, as they support the conclusion that the provision of some medical care does not waive the employer's right to contest liability.

In *Jennings*, an employee felt a sudden pop in his back while lifting an air conditioning unit in July 2002. 142 S.W.3d at 844. The employee was transported to a hospital by ambulance and was diagnosed with a lower back injury. *Id.* The employee

12

received medical treatment at the employer's cost until October 14, 2002, when the treating doctor determined that no further treatment was necessary. *Id.* Between the time of the injury and the doctor's determination, the employer provided "medical benefits in the amount of $5,191.04 and temporary disability benefits in the amount of $7,555.41." *Id.* The employee filed a workers' compensation claim. *Id.* An ALJ issued a temporary award in favor of the employee, ordering the employer to pay temporary partial benefits, medical expenses, future medical care, and the costs of recovery. *Id.* at 845. The employer filed an application for review and claimed to be denying all liability for the employee's claim. *Id.* The Commission dismissed the employer's application for review. *Id.* The employer sought review of the Commission's dismissal by our Eastern District. *Id.*

Before reaching the merits, the Eastern District considered whether it had jurisdiction to consider the appeal. *Id.* at 845-46. The Eastern District recognized that, while section 287.510 authorizes temporary or partial awards, no appeal lies from such an award. *Id.* at 846 ("[N]o appeal lies from a temporary or partial award made pursuant to [s]ection 287.510.") (quoting *Korte v. Fry-Wagner Moving & Storage Co.*, 922 S.W.2d 395, 397 (Mo. App. E.D. 1996)). There are two exceptions: (1) if the award "is not entered pursuant to [s]ection 287.510 but [instead] is an award for permanent total disability pursuant to [s]ection 287.200.2"; and (2) "where the employer claims it is not liable for any compensation." *Id.* (citing *Schwarzen v. Harrah's St. Louis Riverport*, 72 S.W.3d 223, 224 (Mo. App. E.D. 2002)). The Eastern District rejected the employer's argument that its appeal fell into the second category. The Eastern District noted that

13

"prior to terminating compensation," the employer provided medical and temporary disability benefits in a sizeable amount over a period of several months. *Id*. And, the Eastern District noted that despite the employer's current self-serving contention that it was disputing liability entirely, its own medical expert admitted that the employee's injury was work-related. *Id*. The Eastern District thus held that "it is clear from a review of the record that [the employer] is disputing the extent and duration of liability, rather than all liability." *Id*. As such, the Eastern District dismissed the appeal for want of jurisdiction. *Id.*

In *Alcorn*, an employee suffered a back injury while operating a dump truck. 236 S.W.3d at 113. The employer paid $8,757.38 for required medical treatment for the employee and paid $38,429.38 to the employee for temporary total disability. *Id.* at 114. The employee filed a claim for workers' compensation, and the employer denied any further liability. *Id.* The ALJ issued an award it denominated as temporary or partial, and the Commission affirmed the ALJ's award on the employer's application for review.[3] *Id.* The employer appealed. *Id.*

Before addressing the merits, the Southern District considered its jurisdiction to entertain the employer's appeal. *Id.* The Southern District summarized the holdings in cases that have reviewed when an appellate court has jurisdiction to review a temporary or partial award as follows:

> The court of appeals has dismissed the appeal of a temporary or partial award of the Commission when (1) the Commission has left an issue open

---

[3]The Southern District did not address whether the Commission's review of the ALJ's temporary or partial award was proper under 8 C.S.R. section 20-3.040(2).

14

for determination and a decision on that issue is necessary to resolve the controversy between the parties or (2) when the appellant purports to disclaim all liability but a review of the factual circumstances indicate that the injury has been stipulated to or the employer has taken responsibility for the injury by directing or controlling the medical treatment or has compensated the employee for missed days at work. The court of appeals has addressed the merits of an appeal of a temporary or partial award of the Commission when (3) the appeal presents a threshold procedural issue that is necessarily decided before any issue of liability is ever reached or (4) when appellant contends that the threshold evidentiary burden of proof as to a work-related injury has not been met.

*Id.* at 119. The Southern District then found that, although the employer denominated its challenge to the ALJ's temporary award as a challenge refuting "all liability," the factual circumstances in the case indicated that the employer had taken responsibility for the injury by directing or controlling the medical treatment and by compensating the employee. *Id.* As such, the Southern District concluded that the employer's challenge to the ALJ's temporary award was more accurately described as a "challenge to the extent and duration of the award." *Id.* As such, the Southern District dismissed the employer's appeal for want of jurisdiction. *Id.* at 119-20.

Contrary to Fernandez's assertion, *Jennings* and *Alcorn* do not hold that **any** payment by an employer following an employee's purported workplace injury waives the employer's ability as a matter of law from seeking review of an ALJ's temporary award on the basis that it has no liability.[4] Instead, both cases recognize that the factual

---

[4]As noted, *Jennings* and *Alcorn* were actually addressing an appellate court's jurisdiction to entertain an appeal from a temporary award. Neither opinion squarely addressed the Commission's authority to review a temporary award. However, the discussion in both cases about our jurisdiction to hear an appeal from a temporary award (as a matter of judicial construct) when an employer is legitimately challenging liability under the Workers' Compensation Law is relevant to addressing the Commission's

15

circumstances must be reviewed to determine whether the employer has either stipulated to the fact of a compensable injury or has effectively taken responsibility for the injury by directing or controlling the medical treatment or by otherwise compensating the employee in a manner that is inherently inconsistent with contesting liability.

Here, though Smithfield Foods provided early medical care to Fernandez through its facility nurse and at Concentra, the record establishes that this care was limited in scope and as to time, and was terminated immediately when the employer's workers' compensation insurer denied Fernandez's claim. The record also establishes that Smithfield Foods never paid any temporary disability benefits to Fernandez. Subsequent to the early medical care provided to Fernandez, Smithfield Foods has consistently denied that Fernandez suffered an injury arising out of and in the course of his employment and has consistently denied that it has any liability for Fernandez's workers' compensation claim. In fact, the parties agreed that one of the issues the ALJ was required to determine during the hardship hearing was whether Fernandez sustained an injury by accident arising out of and in the course of his employment.

As we held over thirty years ago in *Trammell v. S & K Industries, Inc.*, 784 S.W.2d 209, 212 (Mo. App. W.D. 1989), an employer's "furnishing of medical treatment does not constitute an admission that the condition for which treatment was provided

---

analogous authority to review an ALJ's temporary award pursuant to 8 C.S.R. section 20-3.040(2). It should be noted, however, that subsequent to the 2005 amendments to the Workers' Compensation Law, and the strict construction therein contemplated, our courts have concluded that we no longer have any appellate jurisdiction to entertain review of temporary awards, as no provision is made for such review by statute. *Norman v. Phelps Cnty. Reg'l Med. Ctr.*, 256 S.W.3d 202, 204-205 (Mo. App. S.D. 2008).

resulted from a compensable accident, and is not inconsistent with a later denial of worker[s'] compensation liability." *See also Roberts v. City of St. Louis*, 254 S.W.3d 280, 284 (Mo. App. E.D. 2008) (relying on *Trammell* to conclude that an employer's agreement to set up a trust for the payment of the employee's future medical expenses did not constitute an admission that the employer had agreed to fund such a trust). Employers "should be encouraged [to voluntarily furnish medical services in doubtful cases] and not penalized for it." *Trammell*, 784 S.W.2d at 212. The Commission did not commit error when it concluded that Smithfield Foods was not precluded from seeking review of the ALJ Temporary Award on the basis that it had no liability for Fernandez's claim. The factual circumstances in this case do not support a conclusion that Smithfield Foods stipulated to the fact of a compensable injury, or effectively took responsibility for Fernandez's injury by directing or controlling his medical treatment or by otherwise compensating Fernandez in a manner inherently inconsistent with denying liability. The Commission did not act in excess of its power in reviewing the ALJ Temporary Award.

Point One is denied.

***Points Two and Three: Whether the Accident Was the Prevailing Factor Resulting in Fernandez's Medical Condition and Disability***

Fernandez's second and third points on appeal alternatively challenge the Final Award's conclusion that Fernandez failed to meet his burden of production and persuasion to prove that his accident was the prevailing factor resulting in his medical condition and disability. We consider Fernandez's third point on appeal first.

17

Fernandez's third point on appeal claims that the Commission erred when it concluded that Fernandez failed to meet his burden to establish that Fernandez's February 22, 2021 accident was the prevailing factor in causing Fernandez's medical condition and resulting temporary disability. Fernandez argues that the overwhelming weight of the evidence established that the accident was the prevailing factor in causing both the resulting medical condition and disability. Fernandez also argues that the Final Award failed to address whether his February 22, 2021 fall on the stairs qualified as an accident under the Workers' Compensation Law, and whether any injury resulted from the February 22, 2021 incident before addressing the issue of medical causation.

Fernandez, as the workers' compensation claimant, had the burden of proving he is entitled to workers' compensation under Chapter 287. *Dependent of Hayes v. City of El Dorado Springs*, 681 S.W.3d 744, 746 (Mo. App. S.D. 2024). "Every employer subject to the provisions of [Chapter 287] shall be liable, irrespective of negligence, to furnish compensation under the provisions of [Chapter 287] for personal injury . . . of the employee by accident . . . arising out of and in the course of the employee's employment." Section 287.120.1. As such, the claimant has the burden to prove[5] both:

---

[5]A workers' compensation claimant's "overall burden of proof is made up of two separate burdens, the burden of persuasion and the burden of production." *Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 200 n.8 (Mo. banc 2020) (citing *Krispy Kreme Doughnut Corp. v. Dir. of Revenue*, 488 S.W.3d 62, 67 (Mo. banc 2016)). The claimant's burden of production refers to the claimant's duty to "introduce[] competent and substantial evidence . . . sufficient to support a finding on each of the facts necessary to that award." *Id.* The claimant's burden of persuasion is distinct in that concerns whether the claimant "actually 'convince[d] the fact-finder to view the facts in a way that favors [him].'" *Id.* (quoting *Krispy Kreme Doughnut Corp.*, 488 S.W.3d at 67).

(1) that he suffered an accident, as defined by section 287.020.2 as "an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift"; and (2) that he suffered an injury, defined by section 287.020.3(1) as "an injury which has arisen out of and in the course of employment."

These definitions further make clear that "[a]n injury is not compensable because work was a triggering or precipitating factor." Section 287.020.2. Further, an injury arises out of and in the course of employment "only if the accident was the prevailing factor in causing both the resulting medical condition and disability." Section 287.020.3(1). "'The prevailing factor' is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." Section 287.020.3.(1). Finally, an injury will not be deemed to arise out of and in the course of employment unless "the accident is the prevailing factor in causing the injury," and the injury "does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life." Section 287.020.3(2)(a), (b).

Here, the Commission's Final Award focused on whether Fernandez's accident was the prevailing factor in causing the injury—that is his resulting medical condition and disability. The Final Award did not separately analyze whether Fernandez suffered an accident as that term is defined, or whether his injury was due to a hazard or risk unrelated to employment. However, because the failure to establish any of the essential requirements of a compensable accident and injury is fatal to a claim for workers'

19

compensation benefits, Fernandez's complaint that the Commission skipped a step by not first addressing whether his fall down the stairs qualified as an accident is without merit.

We next turn to Fernandez's contention that the overwhelming evidence supported finding that his accident was the prevailing factor resulting in his medical condition and disability. Determining whether an accident is the prevailing factor resulting in a medical condition and disability requires consideration of medical causation. *Malam v. State Dep't of Corrections*, 492 S.W.3d 926, 929 (Mo. banc 2016). "Medical causation, which is not within common knowledge or experience, must be established by scientific or medical evidence showing the relationship between the complained of condition and the asserted cause." *Id.* (quoting *Gordon v. City of Ellisville*, 268 S.W.3d 454, 461 (Mo. App. E.D. 2008)). When determining whether the scientific or medical evidence established that an accident was the prevailing factor in causing the claimant's resulting medical condition and disability, such evidence should be viewed holistically. *Id.* Employing "an overly technical and parsed analysis" of the scientific or medical evidence is inappropriate to determine medical causation. *Id.* Instead, "[t]he words a medical expert uses . . . are often important, not so much in and of themselves, but as a reflection of what impression such witness wishes to impart." *Id.* (quoting *Mayfield v. Brown Shoe Co.*, 941 S.W.2d 31, 36 (Mo. App. S.D. 1997)).

In addressing medical causation, the Commission had the benefit of medical testimony from Dr. Z and Dr. S. Dr. Z.'s report identified Fernandez's "chief complaint" precipitating his independent medical evaluation as "pain and discomfort affecting the left knee due to an accident that occurred on February 22, 2021," and noted that the MRI

20

of Fernandez's left knee "show[ed] lateral patellofemoral osteoarthritis and significant cartilage loss" as well as "discoid morphology of the lateral meniscus."  Dr. Z.'s report did not otherwise identify the principal cause of the current condition of Fernandez's left knee and disability.  In his deposition, Dr. Z. acknowledged that Fernandez had "severe left knee arthritis" that, while asymptomatic, predated the February 22, 2021 accident and further acknowledged that Fernandez's obesity "perhaps contributed to the . . . preexisting asymptomatic arthritis in the knee."  Dr. Z. explained that it is not unusual to have asymptomatic lateral patellofemoral osteoarthritis and then develop symptoms related to the arthritis after an incident.  Dr. Z. explained that such an incident "causes the release of proteoglycans within the knee joint," causing inflammation, which itself causes swelling and pain.  Dr. Z. opined within a reasonable degree of medical certainty that the accident caused the current condition of Fernandez's left knee.

With respect to Dr. Z.'s testimony, the Final Award stated the following:

In an independent medical examination on September 15, 2021, the employee's expert [Dr. Z.] noted "pain and discomfort affecting the left knee due to an accident that occurred on February 22, 2021."  [Dr. Z.'s] September 15, 2021 report acknowledged that a March 30, 2021 MRI of the employee's left knee "did show lateral patellofemoral osteoarthritis and significant cartilage loss [as well as] discoid morphology of the lateral meniscus," [and Dr. Z.] opined in his October 6, 2022 deposition that inflammation of the employee's knee which occurred after the work event was the cause of his chronic pain.  However, neither [Dr. Z.'s] September 15, 2021 report nor his October 6, 2022 deposition testimony identified the employee's February 22, 2021 work injury as the *prevailing factor*, defined as the primary factor, in relation to any other factor, that caused the employee's left knee pain and discomfort.  To interpret [Dr. Z.'s] opinion as evidence that the employee's current medical condition and need for treatment is due to the work injury's aggravation of his preexisting, non-symptomatic osteoarthritis is to construe the language of [Dr. Z.'s] report

21

beyond its plain meaning and substitute an ALJ's lay opinion on the issue of medical causation. This we cannot do.

. . . . Because [Dr. Z.] failed to identify the February 22, 2021 work event as *the prevailing factor* causing the employee's current left knee condition, vaguely described as pain and discomfort due to inflammation, his opinion on the issue of medical causation is insufficient to meet the "prevailing factor" requirement . . . .

(Footnotes omitted.)

Dr. S. opined after his evaluation of Fernandez that his "underlying arthritic changes, combined with his underlying obesity, are likely the source of his persistent difficulties and problems." Dr. S. observed that the arthritic changes to Fernandez's left knee preexisted the February 22, 2021 accident and that the symptoms were aggravated at the time of the accident, but Dr. S. opined that the preexisting arthritic condition was not caused by or worsened by the accident. The Commission made the following findings with respect to Dr. S's medical opinions:

The employer/insurer's expert, [Dr. S.], noted that the employee's March 30, 2021 MRI showed arthritic changes in his left knee and no evidence of fracture or acute ligament or meniscus tear. [Dr. S.] opined that [Fernandez] suffered from severe degenerative joint disease unrelated to the February 22, 2021 work event. [Dr. S.] assessed no permanent partial disability related to the February 22, 2021 work event and opined that the employee needed no additional treatment or testing of his left knee *as a result of the injury*. In his May 17, 2022 report [Dr. S.] summarized, "Juan Fernandez has significant degenerative joint disease in his left knee, primarily at the patellofemoral joint. The underlying arthritic changes, combined with his underlying obesity, are likely the source of his persistent difficulties and problems."

(Footnote omitted.)

The Commission then concluded that Dr. S.'s opinion was "the most persuasive and credible evidence in the record on the issue of medical causation of the employee's

22

current left knee complaints." The Final Award thus found that Fernandez failed to meet both the burden of production and burden of persuasion on the issue of medical causation.

Fernandez asserts on appeal that the uncontroverted evidence before the Commission was that the February 22, 2021 incident was the prevailing cause in aggravating Fernandez's preexisting lateral patellofemoral osteoarthritis because that preexisting condition became symptomatic for the first time following the accident. Fernandez claims that aggravation of a preexisting, but asymptomatic, condition is compensable. However, "an injury is not compensable merely because work was a triggering or precipitating factor." *Jefferson City Country Club v. Pace*, 500 S.W.3d 305, 313 (Mo. App. W.D. 2016). "Awards for injuries 'triggered' or 'precipitated' by work are . . . proper [*only*] if the employee shows the work is a [prevailing factor] in the cause of the injury." *Id.* (citing *Angus v. Second Injury Fund*, 328 S.W.3d 294, 299 (Mo. App. W.D. 2010)).[6] Thus, for aggravation of a preexisting condition to be compensable, the work-related accident must be both a triggering event and the prevailing factor. *Id.*

Fernandez is correct that both Dr. Z. and Dr. S. opined that the February 22, 2021 accident aggravated Fernandez's preexisting lateral patellofemoral osteoarthritis in that it

---

[6]*Angus* concerned whether an injury was compensable pursuant to the version of section 287.020.3 in effect prior to the 2005 amendment to the statute. 328 S.W.3d at 299. Prior to 2005, the standard for causation was "substantial factor," but the General Assembly amended section 287.020.3 in 2005 to provide that the standard of causation is "prevailing factor." *See* S.B. 1 & 130, 93d Gen. Assemb., 1st Reg. Sess. (Mo. 2005). "Prevailing factor" is a higher standard of causation than "substantial factor." *Jefferson City Country Club*, 500 S.W.3d at 314 (citing *Leake v. City of Fulton*, 316 S.W.3d 528, 531-32 (Mo. App. W.D. 2010)).

triggered symptoms, namely pain and inflammation, for the first time. However, while Dr. Z. opined that Fernandez's current condition--particularly the pain and inflammation still present in his left knee--was a result of the February 22, 2021 incident, Dr. S. opined that, given the length of time between the accident and his May 2022 independent medical examination of Fernandez, Fernandez's "arthritic changes, combined with his underlying obesity, are likely the source of his persistent difficulties and problems." The Commission expressly found Dr. S.'s opinion more credible than Dr. Z.'s opinion.

While we must objectively view the record as a whole when determining whether the Final Award is supported by sufficient competent evidence, the Commission, as the fact finder, is entitled to make findings as to the weight afforded to and the credibility of the evidence before it, and we are required to defer to those findings. *Steinbach*, 667 S.W.3d at 195. "[T]he question of causation is one for medical testimony, without which a finding for claimant would be based upon mere conjecture and speculation and not on substantial evidence." *Jefferson City Country Club*, 500 S.W.3d at 314 (quoting *Angus*, 328 S.W.3d at 300). Where, as here, "the right to compensation depends upon which of two conflicting medical theories should be accepted, the issue is peculiarly for the Commission's determination," and we are bound to that determination, regardless of the evidence supporting the contrary medical theory. *Id.* at 315 (quoting *Dierks v. Kraft Foods*, 471 S.W.3d 726, 733 (Mo. App. W.D. 2015)). Here, the Commission considered the competing expert opinions as to causation, and then accepted Dr. S.'s opinion as credible and persuasive in establishing that the cause of the current condition of Fernandez's left knee were the arthritic change combined with his obesity, not the

24

February 22, 2021 incident.  We reject Fernandez's invitation to substitute our judgment with respect to the credibility of the competing expert witnesses' opinions.

Point Three is denied.

Fernandez's second point on appeal asserts that the Commission's analysis of Dr. Z.'s testimony was "a hyper-technical magical words test" rather than a holistic evaluation of his testimony.  We disagree. While the Commission noted in its Final Award that Dr. Z. failed to explicitly identify Fernandez's February 22, 2021 accident as the "prevailing factor" in causing Fernandez's current left knee condition, the Final Award reflects that the Commission carefully reviewed the entirety of Dr. Z.'s report and testimony before concluding that Dr. Z's opinion that the February 22, 2021 incident caused Fernandez's knee pain could not be reconciled as a "prevailing factor" opinion in light of his recognition that the pain was a symptom of Fernandez's pre-existing arthritic condition.  Moreover, while Dr. Z. opined that Fernandez's current complaint of pain was due to inflammation that followed the February 22, 2021 accident, Dr. Z.'s testimony also clearly acknowledged that Fernandez's pain was a function of pre-existing lateral patellofemoral osteoarthritis in the left knee, and not an acute injury.  Stated another way, the primary cause of Fernandez's left knee pain was his preexisting lateral patellofemoral osteoarthritis, while the February 22, 2021 accident merely triggered symptoms of the preexisting condition.  As a result, we do not agree that the Commission applied an overly technical and parsed analysis of Dr. Z.'s report and testimony to determine that Dr. Z. failed to opine that Fernandez's accident was the "prevailing factor" in causing his medical condition and disability.

25

Point Two is denied.

## Conclusion

The Final Award is affirmed.

_Cynthia L. Martin_____
Cynthia L. Martin, Presiding Judge

All concur